CASE 4—PETITION EQUITY—DECEMBER 7.

# Moran, &c. v. Dillehay, &c.

APPEAL FROM LINCOLN CIRCUIT COURT.

1. THE WORDS "CHILDREN FOREVER" used in the sense of *heirs, or heirs of the body;* and

A DEFEASIBLE FEE WAS VESTED in the testator's daughters by the following provisions of his will: "I give to my daughter, Harriet Givens, all that part of my land," etc., . . . "which property I give unto my daughter, Harriet Givens, and her children forever, and if she should die and have no heirs of her body it is my will that all the land and negroes I have given her should go to my daughter, Eleanor Hocker, and her children." . . . "It is also my will that all the property I may be possessed of at my death should be equally divided between my two daughters, to wit, Eleanor Hocker and Harriet Givens, and their heirs." Harriet Givens had no children when the will was made, but she married, and with her husband sold and conveyed the land, and died leaving children surviving her. After her death the children of Harriet Givens instituted this suit to recover the land, exhibiting the will, and alleging that their mother had only a life-estate in the land devised to her by her father, and that at her death by the provisions of the will they were entitled to the land. The circuit court sustained a demurrer to their petition, and dismissed their suit. That judgment is affirmed. *Held,*

That Harriet Givens took a fee-simple estate in the land, subject to be defeated upon the contingency of her dying without leaving a child or children.

That the devisor, in using the words "I give unto my daughter, Harriet Givens, and her children forever," meant and intended the words "*children forever*" to be words of inheritance only, and used them in the sense of heirs, or heirs of the body.

Moran, &c. v. Dillehay, &c.

And this construction of the will is fortified by prior and subsequent clauses and language in the instrument, evidently showing that the *words "children forever" were used·as synonymous with the word "heirs,"* or *"heirs of the body."*

2. In construing a will all parts of it must be made to harmonize if it can be done without doing violence to its provisions, and the intention of the devisor is to be gathered from the whole will, and this intention must prevail if it be agreeable to the rules of law. (Daniel v. Thompson, 14 B. Monroe, 533.)

JOHNSON & BROWN, }
JOHN A. PRALL, . }  · · · · · · · For Appellants,

CITED

1 Bush, 278, Righter v. Forrester.
10 B. Monroe, 106, Jarvis & Trabue v. Quigley.
10 B. Monroe, 58, Prescot v. Prescot.
12 B. Monroe, 655, Moore v. Moore.
5 Dana, 295, Turner v. Patterson.
14 B. Monroe, 533, Daniel v. Thompson.
11 B. Monroe, 33, Lackland v. Downing.
16 B. Monroe, 313, Carr v. Estill.
14 Bibb, 390, McNair's adm'r v. Hawkins.
2 Duvall, 336, Dunlap v. Shreve.
4 Monroe, 199, Moore v. Howe's heirs.

DURHAM & JACOBS, ⎤
G. W. DUNLAP, . . ⎟
A. HARDING, . . . ⎟  · · · · · · · For Appellees,
HILL & ALCORN, . ⎦

CITED

Cro. James, 590, Pells v. Brown.
Act of December 19, 1796.
1 Marshall, 217, Baird v. Rowan.
1 Marshall, 524, Lewis v. Singleton.
11 B. Monroe, 32, Lachland's heirs v. Downing.
3 Metcalfe, 584, Nunnally v. White's heirs.
3 B. Monroe, 486, Hart v. Thompson.
8 B. Monroe, 616, Deboe v. Lowen.
9 B. Monroe, 205, Yates and wife v. Gill.
12 B. Monroe, 120, Hughes v. Hughes.
2 Blackstone's Commentaries, 298.

CHIEF JUSTICE PRYOR DELIVERED THE OPINION OF THE COURT.

Larkin Sandidge died in the county of Lincoln, in the year 1827, leaving a last will and testament, dated on the 9th of March, 1816, with a codicil attached, dated the 16th of January, 1823. He left surviving him his wife and two daughters, Eleanor Hocker and Harriet Givens. He owned at his death a considerable estate, consisting mostly of land and slaves, all of which was devised by his will to his wife and daughters. After the death of the devisor, his daughter, Mrs. Givens, intermarried with Moran, and had by him several children. Moran and his wife (the wife Harriet being Harriet Givens by name at the date of the will), after the death of Sandidge, sold and conveyed the land devised to the wife by the will of her father to George Dunlap; and by various sales and conveyances from Dunlap down the appellee, Dillehay, has, as he insists, become the owner of the land. The present suit was instituted by the appellants, who are children of Mrs. Moran (formerly Harriet Givens), in which they allege that their mother had only a life-estate in the land devised to her by her father's will, and that at her death, by the provisions of the will, they were entitled to the land; that the mother is dead, and the purchasers from her and her husband only acquired her interest, which was for life only. The facts herein recited appear on the face of the petition, to which a demurrer was sustained by the court below, and the petition dismissed, and from which this appeal is prosecuted. By an amended petition filed it appears that Mrs. Moran at the date of her father's will had no children. The legal question presented arises from the construction given the will of Sandidge by the court below, a copy of that instrument having been made part of the pleadings. By the provisions of this will the devisor gives to his wife certain slaves and other property, and says: "All this I give unto my wife until her death or marriage, and at her death or marriage it is my will that my daughter, Eleanor

Hocker, shall have Daniel, and my daughter, Harriet Givens, shall have Horten, and the balance of my negroes I have given unto my wife shall be equally divided between my two daughters, Eleanor Hocker and Harriet Givens, and their children."

By the fourth clause of the will the devise to Harriet Givens is as follows, viz.: "I give unto my daughter, Harriet Givens, all that part of the tract of land I bought of Jacob Stevens (describing it), and also all the land I own adjoining the said tract, except the tract I have given my daughter, Eleanor Hocker. I also give unto my daughter, Harriet Givens, one negro man named Lewis, negro boy named Alfred, negro woman named Anna," etc., "*which property I give unto my daughter, Harriet Givens, and her children forever;* and if she should die and leave no heirs of her body, it is my will that all the land and negroes I have given her should go to my daughter, Eleanor Hocker, and her children."

The devisor makes the same provision in his will as to Eleanor Hocker, except that he provides in the event of her death without children the land and negroes willed to her are to go to *Harriet Givens or her children.* The last clause in the will relative to the property of the devisor reads: "It is also my will that all the property I may be possessed of at my death should be equally divided between my two daughters, to wit, Eleanor Hocker and Harriet Givens, or their heirs."

The only question presented in this case is, did the devisee, Mrs. Givens, take an estate for life only, with remainder to her children, or did she take a fee in the land subject to be defeated upon the contingency of her dying without leaving a child or children. In construing a will all parts of it must be made to harmonize, if it can be done without doing violence to its provisions, "and the intention of the devisor is to be gathered from the whole will, and this intention must prevail

if it be agreeable to the rules of law." (Daniel v. Thompson, 14 B. Monroe, 533.)

There are many reported decisions of this court upon the construction of wills, and some of them bear a striking analogy to the case under consideration. In the case of Deboe v. Lowen (8 B. Monroe, 616) the will of Francis Lowen contained the following provisions: "It is my will that if any of my children die without lawful heir or heirs, that the property hereby willed shall go to my surviving children." The devisor left several children, and among them William Lowen, who sold his interest in the father's land under the will, and the purchaser refused to pay the purchase-money, alleging as one of the grounds therefor "that William Lowen was childless and unmarried, and that his title terminated with his life." This court in determining the nature of William Lowen's title adjudged that each one of the children took a fee, to be defeated in the event of their dying without a child or children.

In the case of Hart v. Thompson's heirs (3 Monroe, 486) "the devise was to testator's nine children, and if·either should die without heirs of their body lawfully begotten, that their part be equally divided among the other children." This was held to vest in each of the children a fee terminable on the contingency of their dying without leaving issue surviving them. This doctrine is also recognized in the case of Daniel v. Thompson, 14 B. Monroe, 533.

In the case of Lackland's heirs v. Downing's executor, (11 B. Monroe, 32) the following clause is found in the will of George Downing: "All the rest and residue of my estate to be equally divided after my death between my brother, John Downing, my two sisters, Elizabeth Cameron and Nancy Gibson, and the children of sister Nellie Lackland, to them and their children forever." In this case the court says that, without referring to previous clauses in the will to aid in its construction, the words "to them and their children forever"

were mere words of inheritance, children being used in the sense of heirs, or heirs of the body. This case is much like the one we are now considering, and in the present case we are well satisfied that the devisor, in using the words "I give unto my daughter, Harriet Givens, and her children forever," meant and intended the words "children forever" to be words of inheritance only, and used them in the sense of heirs, or heirs of the body; and this construction of the will is fortified by prior and subsequent clauses and language in the instrument, evidently showing that the words "children forever" were used by the testator and draftsman of the will as synonymous with the word "heirs" or "heirs of the body." The evident intention of the devisor was that in the event of the death of either of his daughters without leaving children the survivor should own the property. In making the devise to Eleanor Hocker, in the third clause of his will, the testator says: "If she and all of her children die without an heir of her body left, the land and negroes which I have given her, it is my will, shall go unto Harriet Givens or her children." The devisor here intended that if Mrs. Hocker died childless Mrs. Given was to have her portion of the estate if living; if not, then it was to pass to her children; thereby vesting Mrs. Givens with the absolute title to the property willed to Mrs. Hocker in the event of the latter's death without children and Mrs. Givens surviving her.

The devisor also, in making the provision for Mrs. Givens, says that if she should die without leaving an heir of her body her portion is to go to Mrs. Hocker and her children; thus using the words "heir of her body" in the devises to both daughters, and defeating the fee vested in each daughter upon the contingency of her dying without leaving an heir of her body. In the last clause of the will the devisor directs that all of his estate that he may be possessed of at his death shall be divided equally between his two daughters, Eleanor Hocker

and Harriet Givens, *or their heirs,* using the word heirs in that portion of his will speaking last as to the disposition of his whole estate, or as to that portion of it not already designated, clearly intending that the fee-simple title to all this property should be and was vested in his two daughters, subject to be defeated upon the contingency of their dying without leaving children. In the codicil to this will, in speaking of certain moneys that Mrs. Hocker was to pay, he uses the word "heirs," and says if she and her heirs fail to pay this money it is to be deducted from the personal estate *willed to her and her heirs.*

This case is not analogous to the case relied on by counsel for the appellants of Carr and wife v. Estill, 16 B. Mon. 309. In that case the language of the will is: "The remainder [meaning a tract of land he had previously described] I bequeath to Mary B. Didlake and her children." There was no other clause in the will from which any other inference could be drawn than that the devisor intended that the children of Mrs. Carr should have an interest in the land devised. The court held in that case that, although Mrs. Didlake had no children at the time, she took a life-estate only in the land. In the case we are considering the devisor first gives the land and negroes to Harriet Givens, and in a subsequent provision, or after the gift to Harriet Givens, he uses the language, "which property I give to my daughter, Harriet Givens, and her children forever," and in the very next line says, "that if she should die and leave no heir of her body," the property is to pass to Mrs. Hocker and her children, showing evidently that the devisor attached the same meaning to the words "children forever" that he did to "heirs," or "heirs of the body," and used the language merely to describe the estate he had passed, and not with a view of vesting the title in any other person than his daughter, except upon the contingency already mentioned; and in confirmation of the propriety of this construc-

tion in the next clause of the will he gives all of his property that he leaves at his death to his two daughters and "their heirs," and in addition he had created by the provisions of the will a life-estate in his wife in certain property. The language creating it is plain and intelligible; viz., "All this I give unto my wife until her death or marriage." He knew what a life-estate was and how to create it, and if his desire was that his daughters should have a life-estate only, and intended that the after-born children of Mrs. Givens should enjoy this property after the mother's death, he would have used different language in expressing his intention and said, "I give this property to my daughter for life, and at her death to her children." No such language is used either in express words or by implication, for the reason that it was not the intention of the devisor so to devise it.

We concur in the opinion of the court below that the petition presents no cause of action, and the same is therefore affirmed.