CASE 49—PETITION EQUITY—NOVEMBER 20.

| 98 | 285 |
| 99 | 209 |
| 98 | 285 |
| 118 | 426 |
| 118 | 525 |
| 98 | 285 |
| 132 | 776 |

# Hood, &c., v. Dawson.

APPEAL FROM MASON CIRCUIT COURT.

CONSTRUCTION OF DEVISE—DEFEASIBLE FEE.—Under a devise by a testator to his nephew of "the farm on which I now live, to him and his children forever," with a devise over in the event of his dying without children, the nephew took a fee simple' estate subject to be defeated only in the event of his dying without children, and he having died leaving children they can not claim as against his grantee, the word "children" being used in the will as a word of limitation or inheritance, and not of purchase.

JOHN L. SCOTT & SON FOR APPELLANTS.

The devise to James Wilson creates in him only a life estate remainder to his child or children. (McNair v. Hawkins, 4 Bibb., 390; Jarvis & Trabue v. Quigley, 10 B. Mon., 104; Phillips v. Johnson, 14 B. Mon., 175; Moore v. Moore, 12 B. Mon., 656; Thurman v. White, 14 B. Mon., 569; Carr and Wife v. Estill, 16 B. Mon., 312; Mitchell v. Simpson, 88 Ky., 125; Mefford v. Dougherty, 89 Ky., 58; Frank v. Unz, 91 Ky., 621; Koenig v. Kraft, 87 Ky., 95; Davis v. Hardin, 80 Ky., 672; Weaver v. Weaver, 92 Ky., 421; Bodine v. Arthur, 91 Ky., 53; Stevenson v. Stevenson, 91 Ky., 51; Goodridge v. Goodridge, 91 Ky., 510; Fletcher v. Tyler. 92 Ky., 146; Butler v. McMillan's Heirs, 88 Ky., 419; Best v. Best, 88 Ky., 570; Henderson v. Mack, 87 Ky., 379; Coots v. Yowell, 16 Ky. L. R., 2; Rev. Stats. (1851), p. 542, sec. 15; Gen. Stats., chap. 63, p. 826; Acts 1891-2-3, p. 496, secs, 9, 10, 11.)

HORACE S. CLARK of counsel on same side

E. L. WORTHINGTON for appellees.

Appellant Sarah E. Wood took no title to the land in dispute under the will of James Wilson. The word "children" is used in the will as a word of limitation and not of purchase. (Moran v. Dillehay, 8 Bush, 434; Lackland v. Downing, 11 B. Mon., 32; Carr v. Estill, 16 B. Mon., 309; Williams v. Duncan, 92 Ky., 125; 2 Jarman on Wills, star pages 1241, 1242; Theobald on Wills, 333; Hawkins on Wills, 198.)

JUDGE GRACE delivered the opinion of the court.

The questions presented in this record involve the title to a tract of land of some hundred and eighty acres lying in Mason county and near the city of Maysville and supposed to be of considerable value.   This land is claimed by Sarah E. Hood, the appellant, who is the sole child and heir at law of James Wilson, the son of Robert Wilson and devisee under the will of his uncle, James Wilson.

It is also claimed by the appellees as vendees under deed from James Wilson, the devisee aforesaid, so that, both claimants tracing title back to James Wilson, Sr., and claiming same under his will, the first and only thing to do is to determine the construction and true meaning of same.

The material clauses of this will bearing in any degree on this case are as follows:

"Secondly, I give and bequeath to my beloved wife, Priscilla Wilson, during her natural life only, all my estate, both real and personal.

"Thirdly, at the death of my wife I give to James Wilson (the son of Robert Wilson) the farm on which I now live, to him and his children forever, but if the said James Wilson shall die leaving no child nor children of his own lawfully begotten, then I give said farm to my two nephews, James

Wilson and Joseph Wilson, the sons of my brother, William Wilson."

By the fourth clause of his will testator, after making some minor bequests to some servants and to his wife's kindred, says: "And all the rest and residue of my estate I give and bequeath to said James Wilson, son of Robert Wilson above named, to him and his heirs forever."

The contention of appellant is that under the third clause of this will her father, James Wilson, Jr., only took a life estate, with remainder to his children, she being the only one, while the appellees contend that James Wilson took a fee in said land, to be defeated only on the condition that he died leaving no child or children surviving him, and that leaving plaintiff, his only child, his title became absolute and inured to the benefit of his vendees and appellees, who claim under them.

The will was written in 1834. James Wilson, Sr., died in 1837. In 1841 James Wilson, the devisee, sold and conveyed, with warranty against himself and his heirs, this land to Respass and Coleman, and by subsequent conveyances, same came regularly to the appellees. James Wilson, Jr., the devisee, lived until 1891.

The true intent and meaning of this third clause of testator's will is appealed to by both parties in support of their respective claims.

Cases involving similar or substantially similar language in other testaments have so often been before this court that the meaning to be attached to the one now under consideration is believed to be a question of authority and precedent rather than of argument. Many cases are cited by both parties, each party citing those most favorable to his present contention.

In the case of Bradley, &c. v. Skilman, &c., 3 Ky. Law Rep., 734, the devise was in these words: "I give and bequeath to my son Shelton (Bradley) all the residue of my property after paying my debts, and the foregoing legacies *to him and his heirs or children, should he have any, forever*, but, should my son Shelton *die without heirs*, then the residue of my estate that may come into his possession agreeable to this my will is to be equally divided, etc.," between his (testator's) several grandchildren. This devise was, upon full consideration, held to vest a fee simple estate in the son, Shelton Bradley, subject to be defeated only by his dying without heirs or children. He left children who claimed as devisees in remainder as against the vendees of their father. Some points of similarity in the two cases may be noted, as that in each case the devisee had no child at the time of making the devise; that in each case was there a devise over in the event the devisee named should die without child or children surviving him; and that in each case the testator, by the terms of the devise, and in attempting to describe its duration, says: "To him and his heirs or *children forever*."

In each case the devisee sold the property as his own, and in each case, after the death of the devisee, the heir at law filed suit against the purchaser in possession.

True, in the case cited, the language used is "to him and his heirs *or children forever*," while in the case under consideration the language is "to him and his children forever," but the court, in the case cited, holds the words "heirs" and "children" to be used interchangeably and as meaning one and the same thing.

In the case of Moran v. Dillehay, 8 Bush, 434, the contest arose under the will of Larkin Sandidge and upon the following clause: "I give to my daughter, Harriet Givens, one

negro man, Lewis; negro boy, named Alfred; negro woman, named Anna, etc., which property I give unto my daughter Harriet Givens and her children forever, and if she should die and leave *no heirs of her body* it is my will that all the land and negroes I have given her should go to my daughter, Eleanor Hocker, and her children."

In considering this case the court said: "We are well satisfied that the devisor, in using the words: 'I give unto my daughter, Harriet Givens, and her children, forever,' meant and intended the words 'children forever,' to be words of inheritance only, and used them in the sense of *heirs or of heirs of the body,* and this construction of the will is fortified by prior and subsequent clauses and language in the instrument, evidently showing the words 'children forever,' were used by the testator and draftsman of the will as synonymous with the words, *'heirs,'* or *'heirs of the body.'* " Several other clauses in the will then under examination are quoted to show that the testator, by the words used, intended to vest a fee in his daughter to be divested only in the event of her dying without leaving children, and the court in that case held a fee in the daughter, Mrs. Givens, subject to be divested, etc. In other words, the court held the words "children forever" to be words of inheritance and not words of purchase. In this case it will be noticed the words of the gift are identical with the words used in the testament under consideration.

In the case of Lachland's heirs v. Downing's ex'ors, 11 B. M., 32, the question arose under the will of George Downing, and the language of the devise was as follows: "All the residue of my estate, whether real, personal or mixed, not herein otherwise disposed of, I desire may be equally divided after my death between my brother, John Downing, and my two

sisters, Elizabeth Cameron and Nancy Gibson, and the children of sister Nellie Lachland, *to them and their children forever*, etc."

In that case it was held that the words used, as applied to the devise to his brother and his two sisters, "*to them and their children forever*," were words of *limitation or inheritance* and *not words of purchase*. So that as to their several portions the brother and each sister took a *fee*, but nothing to the children of either. Again, the similarity of the words employed and the words under consideration is strikingly apparent.

The court said: "But the words actually used, '*to them and their children forever*,' evidently occupy the place of what is called the *habendum*, and is an abridgment of the usual *habendum* clause, the office of which *is not to introduce new grantees or donees*, but to describe *the estate* or interest of those already named or designated" (in the granting clause).

In the case of Williams, &c. v. Duncan, &c., 92 Ky., 125, the question arose under the will of William C. Williams as follows: "The remainder of my property on Fifth street, between Main street and the river, in the city of Louisville, I give and devise to *my grandsons and their children*."

Under this will it was held "that while the word 'children' is not, like 'heirs,' a *word of limitation*, importing by its own force a fee simple estate, yet it will be so construed when necessary to effectuate the intention of the testator, as made manifest from a consideration of his whole will.

Under this devise by a grandfather to his grandchildren and their children the grandsons take a fee simple estate, it being manifest throughout the will that it was used in the sense of "heirs." Here, again, the language in the two de-

vises is the same, except, indeed, that in the devise under consideration the word "forever" is added.

In these several cases cited numerous other authorities are quoted in support of this same view.

We conclude from the authorities cited that by the language used in this will—"I give to James Wilson the farm on which I now live, *to him and his children forever*, but if the said James Wilson shall die leaving no child nor children of his own lawfully begotten, then I give the said farm to my two nephews, James Wilson and Joseph Wilson, the sons of my brother, William Wilson, to them and their heirs forever"—an estate in fee simple was created in James Wilson, to be defeated only in the event that he should die without children; that he took the fee simple estate and that his child took nothing; hence, that his deed of conveyance passed good and perfect title to his vendees, and that his daughter, the appellant, can not recover; that the granting clause of this devise is *first to him* (James Wilson), and that the further clause, *"to him and his children forever,"* is but descriptive of the estate taken, and not intended to introduce new beneficiaries; that the words "to him and his children forever" mean as clearly *"to him forever"* as they do "to *his children forever;"* that, as used, they are equivalent to the words "heirs or heirs of his body," or to an indefinite issue; that, as used, they become words of *limitation* and not of purchase; that under the common law they would have created an estate tail, which for a long time in Kentucky, by statutory enactment, has been declared to be an estate of inheritance in the first taker; that these words, as thus used and construed, are not in violation of the statute, which provides "that when any

estate shall be given by deed or will to any person *for his life, and after his death* to his heirs or to the heirs of his body or his issue or descendants, the same shall be construed to be an estate for life only in such person and a remainder in fee simple to his heirs or the heirs of his body or his issue or descendants."

This statute has often been recognized and upheld by the courts, and yet the question remains, preceding in every case its application, whether an estate has been given for life only to any one.

Certainly it has not been done in this case, for we observe by the second clause of testator's will he did create a life estate in his wife in this identical property. He did it in these words: "I give and bequeath to my beloved wife, Priscilla Wilson, *during her natural life only*, all my estate, both real and personal"—words far different from those used in the third clause under consideration. Manifestly testator knew the difference between an estate for life and one of inheritance.

In the latter part of the fourth clause of his will he says: "All the rest and residue of my estate I give and bequeath to said James Wilson, the son of Robert Wilson above named, to him and his heirs forever." Here he gave an estate of inheritance pure and simple without conditions. And, in the third clause, different still from both the others, he gave an estate of inheritance to be defeated only in the event that his nephew should die without leaving child or children surviving him. This he did not do. The contingency never happened.

As said before, counsel for appellants cite quite a number of authorities, supposed to be in support of their contention in this case. While we have not time to review them in de-

tail, we will say that many of them have been cited and commented on in the cases we have quoted and shown to rest on different language or a different basis and surroundings; and by reason of the facts being so widely different, they are believed not to be in conflict with the views herein expressed.

Quite a number of the cases cited by appellant arise under wills made by husbands in favor of their wives and children. They are of such frequent occurrence in the court that they may be almost said to make a class by themselves.   In such cases the constant and uniform tendency of the court has been, in cases where the language was in substance to the wife and children, or for the use and benefit of the wife and children, or of the wife and the heirs of her body or issue, etc., to hold that the wife takes a life estate only and that the children take in remainder.   The reason assigned by the court for this favorite construction is that otherwise, if the wife was to take a part in fee simple, this part of the estate might pass to some stranger in blood to the husband, a possibility not to be supposed consonant to his wishes and intention.   This rule has been also applied to cases where the consideration for the conveyance moves from the husband to the grantor.

Our view of the law of this case makes it unnecessary for the court to pass upon the liability of the appellant upon the covenant or warranty of title of this land by her ancestor, James Wilson, it being stated in her petition that she received from her father assets of greater amount than the value of this land.

For the reasons indicated the judgment of the court below in dismissing plaintiff's petition is affirmed.