# NATIONAL SUBWAY COMPANY v. CITY OF ST. LOUIS, Appellant.

## Division One, June 18, 1902.

1. **Franchise Fee:** VOID ORDINANCE: REVERSAL: LIABILITY FOR INTERIM. A city by ordinance granted a corporation authority and permission to construct and operate underground conduits, pipes, etc., for conveying electricity, and for such "rights and franchises" required the plaintiff to pay to it $500 semiannually. Afterwards the city claimed the ordinances were void, and denied to the company further enjoyment of the right, whereupon the company appealed to this court, which also held the ordinances void, but later, on a subsequent application to this court, the former judgment was reversed, and the ordinances held valid. Thereupon the city demanded $3,000 from the company, being the semiannual payments provided for by the ordinances which fell due in the interim between the first and second judgments. *Held,* that, the city having denied to the company exercise of the "rights and franchises" granted, it could not exact compensation therefor, and the demand must be denied. To permit it to recover, or to retain the money after payment thereof has been made under protest, would be to permit it to take advantage of its own wrong. Nor can it justify such demand by saying the company was deprived of the enjoyment of the rights by reason of the first erroneous judgment of the court, for that would impose on the company the burden of paying for the mistakes of a court.

2. ———: ———: FRANCHISE OR CONSENT. In such case it is immaterial whether the grant made to the company be considered a "franchise" or mere "consent." Whatever it may be called, the city granted to the company the privilege to construct conduits for carrying electricity, and the company agreed to give $500 semiannually for that privilege.

Appeal from St. Louis City Circuit Court.—*Hon. H. D. Wood,* Judge.

AFFIRMED.

*Chas. W. Bates* and *Wm. F. Woerner* for appellant.

(1) The city of St. Louis had a right to contract by ordinance for the payment of the sum plaintiff agreed to pay in order to obtain the necessary consent of the city to the use of its streets, and, hence, the contract so entered is binding. Charter St. Louis, art. 3, sec. 26, clause 2; State ex rel. v. St. Louis, 145 Mo. 551; St. Louis v. Tel. Co., 148 U. S. 105; St. Louis v. Tel. Co., 149 U. S. 468. (2) The provision for the payment to the city of the amount in question, provided for in the ordinance and accepted by respondent, being a valid provision, could be abrogated or modified only by the city by ordinance, speaking through its municipal assembly and mayor. The action or non-action of a department or member of a department can not make a new law, or operate to withdraw the consent of the city conferred by the ordinance. The action or duty of the street department was ministerial (145 Mo. 577, 592). The city never having enacted any further legislation, it follows that the ordinance always remained in force. The decision in State ex rel. v. St. Louis, 145 Mo. 551, upholding the ordinance, and overruling State ex rel. v. Murphy, 134 Mo. 548, wherein it had been pronounced void, did not in legal contemplation make a change in the existing law, but decided that the law always had been as therein held. The respondent, therefore, had the right in law, at any time since obtaining the consent of the city, to, the laying of its subways, to enforce its rights (if unjustly withheld) by mandamus, just as it did do in the last case. That it was misled by the first decision, or delayed exercising its privileges pending that decision, can not operate to exonerate it from its obligations. The fact of this obligation and its observance by the company, was one of the reasons moving this court to issue the mandamus (145 Mo. 564).

*Boyle, Priest & Lehmann* and *Geo. W. Easley* for respondent.

The sole consideration for the payment of the $3,000 in controversy, was the consent of the city to respondent's occupation of the streets for the purposes named in the ordinance. The city, by the refusal of its officer to grant the necessary permits, withheld the consent it had given. The $3,000 being paid for that consent, and that consent being thus withdrawn and withheld, there was an entire failure of consideration, and if the appellant were suing to recover that sum, such failure of consideration would be a good defense; or, under the general rule of the law that an action of assumpsit for money had and received is an equitable remedy that lies in favor of one person against another, when that other person has received money from the plaintiff, under such circumstances that in equity and good conscience he ought not to retain the same, and which *ex aequo et bono,* belongs to the plaintiff, the respondent might have sued and recovered in assumpsit. Tamm v. Kellogg, 49 Mo. 118; 4 Wait's Actions and Defenses, p. 469, sec. 1. Or, might recover the same because the consideration for which it was paid has failed. 4 Wait's Actions and Defenses, p. 500, sec. 22.

MARSHALL, J.—This is a controversy submitted without action under section 793, Revised Statutes 1899. The agreed facts are as follows:

"It is hereby stipulated and agreed by and between the plaintiff and defendant herein, as follows:

"1. Ordinance No. 15953 of the city of St. Louis is as follows:

"'An ordinance amendatory of ordinance numbered 14798 of the city of St. Louis, approved February 15, 1889,

Vol. 169 mo—21

entitled: "An ordinance to provide for the laying of electric wires under ground."

" 'Be it ordained by the municipal assembly of the city of St. Louis, as follows:

" 'Section 1. Ordinance numbered 14798 of the city of St. Louis, entitled: "An ordinance to provide for the laying of electric wires under ground," approved February 15, 1889, is hereby amended by striking out all of sections six and ten, and by striking out sections one, four and five, and inserting in lieu thereof the following, viz.:

" 'Section 1. Permission and authority is hereby granted to and duly vested in the National Subway Company of Missouri, and its successors and assigns, to construct, maintain and operate conduits, pipes, mains, conductors, manholes and service and supply-pipes in any of the streets, alleys, squares, avenues and public highways of the city of St. Louis, for and during the period of fifty consecutive years, from February 15, 1889, for the purpose of distributing and maintaining a line or lines of electric, telegraph, telephone, and other wires, together with all necessary feeders, outlets and service wire or other electrical conductors to be used for the transmission of electricity for any and all purposes; provided, that before the said company, its successors or assigns shall lay any conduits or pipes in any of the streets and alleys of the city, it shall submit to the board of public improvements, detailed drawings and statements showing the plan of the work proposed to be done in said streets and alleys, including the route to be followed, and the size and dimensions of the structure, and it shall not proceed with the laying thereof until such drawings, statements and plans, and route and size and dimensions of the structure, have been approved and indorsed by the said board.

"Section 4. In order to insure a faithful compliance of section three of this ordinance, said company shall be required within ten days from the acceptance of this ordi-

nance, to pay into the city treasury the sum of one thousand dollars, as a special fund, to be used by the street commissioner in making necessary repairs and changes which the said company may be liable to make under the provisions of this ordinance. Whenever, in the opinion of the street commissioner, any street, alley or highway, upon which pipes and appurtenances have been laid by said company, is out of repair in consequence of the use thereof by it, or whenever it becomes necessary to take up any pipe or appurtenances, on account of the construction or reconstruction to streets, alleys, sewers, or any other improvements, the street commissioner shall notify the said company by mail or otherwise, to cause the same to be repaired, or cause such changes or removals to be made as are necessary; and if the said company shall fail or refuse to obey such notice within the time prescribed therein, then the street commissioner shall cause the repairs to be made or work to be done and paid for out of the special fund hereinbefore provided; whenever a part or the whole of said one thousand dollars shall have been expended for the purpose hereinbefore mentioned, the street commissioner shall notify the president, manager or superintendent of the National Subway Company of Missouri (and its successors or assigns), in writing or otherwise, to pay so much more money into the city treasury as will bring the fund up again to the amount of one thousand dollars, within ten days thereafter; and if said president, manager or superintendent of said company, and its successors or assigns, fail to pay into the city treasury the amount so specified within the time stated, then the said president, manager or superintendent shall be deemed guilty of a misdemeanor, and upon conviction thereof, shall be fined not less than fifty dollars, nor more than one hundred dollars, for each and every offense, and every and each day thereafter that said deposit is not made good shall be considered a distinct and separate offense.

" 'Section 5. Such corporation (or its successors or assigns), shall be a common carrier, and shall have and enjoy such rights, privileges and immunities as are usually had and enjoyed by such companies, and shall pay to the city of St. Louis for the above rights and franchises, semiannually in advance, the sum of five hundred dollars, commencing on the day this ordinance is approved.

" 'Approved February 6, 1891.'

"2. That on or about December 20, 1894, the board of public improvements, having approved its plans and specifications for a subway, the St. Louis Underground Service Company made·application to · the street commissioner of the city of St. Louis under the provisions of section 1303, article 5, chapter 32, and section 568, chapter 15, article 1, Revised Ordinances of 1887, made part hereof, at that time Michael J. Murphy, for excavation permits to lay and construct conduits under said ordinance 15953, which permits, so applied for, the said street commissioner refused to issue, at or about the date last aforesaid. Pursuant to the resolutions of the city council, which are hereto attached and marked exhibits 'A' and 'B,' respectively.

"3. That thereupon, to-wit, on or about January 14, 1895, upon the petition of the St. Louis Underground Service Company, an alternative writ of mandamus issued out of Division No. 1 of the Supreme Court of Missouri, directed to said Murphy, street commissioner as aforesaid, returnable for January 24, 1895, said mandamus proceeding being known as and numbered 7446 of said Supreme Court. That such action was had in said proceeding that said Division No. 1 of said court, on or about June 25, 1895, denied a peremptory writ of mandamus therein. That thereafter, on July 2, 1895, a motion for rehearing was filed by said St. Louis Underground Service Company, which motion was, by the court, on July 9, 1895, overruled, but at the same time the judgment theretofore rendered was modified, and

said St. Louis Underground Service Company was allowed thirty days to plead to the return theretofore filed to the alternative writ, by said Murphy, street commissioner, as aforesaid. That on or about July 30, 1895, an answer was filed to said return, and the cause, upon such pleadings, was duly reset for hearing before said Division 1, where the same was submitted and fully argued, and on or about February 18, 1896, the said Division 1, again entered judgment, denying the mandamus prayed for. That on or about March 10, 1896, a motion which had been filed by said St. Louis Underground Service Company to transfer said cause to the Court in Banc was sustained, and the cause was accordingly transferred to the Court in Banc. That on or about May 5, 1896, said cause was argued and submitted before the Court in Banc, with the result that thereafter, on or about June 2, 1896, the Court in Banc rendered its judgment denying a peremptory writ. That on June 6, 1896, a motion for rehearing, which had been filed by said St. Louis Underground Service Company, was overruled, and the judgment of said Supreme Court thereby became final. That the opinions delivered in Division and in the Court in Banc will be found reported in 134 Missouri, at pages 548 and following.

"4. That from and after said time, and until February 19, 1897, no application of any kind for permits to exercise any rights or privileges under the ordinance aforesaid were made or presented to the city of St. Louis or to any of its officers; but that on said February 19, 1897, said St. Louis Underground Service Company did present to the board of public improvements certain plans and statements for service and supply-pipes connecting a manhole in its subway located at the southwest corner of Broadway and Olive streets, with the areaway under the building and sidewalk located at said southwest corner of Broadway and Olive streets, in order to connect the subway with the said building. And said company requested said board to approve the said plans, and to

thereupon issue to it a permit for the doing of said work. That in view of the judgment and decision of the Supreme Court, such request was not complied with, and that the board of public improvements did not undertake to pass upon such plans, neither approving nor disapproving the same. That thereafter, or or about May 24, 1897, a petition for mandamus was presented to the Supreme Court of Missouri, on behalf of the State of Missouri, at the relation of The National Subway Company· of Missouri, the St. Louis Subway Company, The St. Louis Underground Service Company, Charles Sutter, and Emil A. Meysenburg vs. The City of St. Louis, the Board of Public Improvements, the President of said Board, and the members composing the same, upon which petition there was issued by said court, on said day, an alternative writ requiring the respondents to take action upon the application so presented on or about May 24, 1897, or to show cause on or before June 8, 1897, why they had not done so. That on June 8, 1897, respondents did file a return to said alternative writ, whereupon the relators filed their demurrer to said return, and the hearing of the cause was continued until the October term, 1897, of the Supreme Court. That on the day preceding the first day of the October term of said court, relators filed an "amended writ of mandamus," to which amended writ respondents filed their return. That thereafter, to-wit, on or about June 25, 1898, said proceedings having been theretofore duly argued and submitted to the Supreme Court sitting In Banc, said court so sitting did enter its judgment and decision granting a peremptory writ against the respondents to such proceedings; the opinion of the court being reported in 46 S. W. Rep. 981.

"5.   That in accordance with said judgment of the Supreme Court, the application of February 19, 1897, was duly considered and acted upon, as have been ever since that time, all other applications of the plaintiff herein.

"6.   That the franchise fees and amount due and owing

to the city of St. Louis under said ordinance 15953, for the period intervening between December 20, 1894, and July 1, 1898, amount to the aggregate sum of $3,000.

"7.    That plaintiff has paid to the city of St. Louis the said sum of $3,000 under protest, reserving to itself the right to sue for the return and recovery of the same.    That at said time the plaintiff claimed that all other parties had conveyed to it all their respective rights and interests, and defendant, without questioning said claim, accepted from plaintiff said $3,000.

"8.    The question submitted to the court for its decision is whether, under the facts herein set forth, the city of St. Louis was entitled to demand, collect and receive the said sum of $3,000.    If it was, then there should be judgment for defendant; and if it was not, then there should be judgment for plaintiff for $3,000."

The exhibits referred to were as follows:

EXHIBIT "A."

"Resolution of City Council, Dec. 18, 1894.
"Resolutions offered by President Nagel:

"*Whereas,* The St. Louis Underground Service Company has applied for and obtained permits to take up the granite pavement, and to put down electric-wire conduits on Broadway between St. Charles and Washington avenue, and between Washington and Franklin avenue, and at other points in this city; and,

"*Whereas,* The city counselor has given the opinion that ordinances Nos. 14798 and 15953, under which said company claim to operate, are valid, and confer the rights and authority so sought to be exercised; and,

"*Whereas,* There seems to be no reason to doubt that able counsel have given opinions arriving at exactly the opposite conclusions; and,

"*Whereas,* The subway commission appointed by the mayor has made its report, and the whole question of underground service is now before the city authorities for consideration, in the shape of definite bills and otherwise; and,

"*Whereas,* A controversy and final decision upon these questions at some time seems inevitable; and,

"*Whereas,* It is of great importance to the city, and presumably of as much interest to said corporation to have the question of validity of said ordinances, and if valid, their proper interpretation, judicially determined before the situation becomes complicated by the creation of new conditions or interests, and while a decision may still be had without involving either party in much costs; and,

"*Whereas,* It is in the opinion of this body entirely proper in cases of such importance to assert any interest of the city which is not based upon mere technicality, but which depends upon the judicial solution of questions of interpretation as to which fairminded and competent men may and do differ; and,

"*Whereas,* In view of the opinion given by the city counselor, he can not fairly be expected to take charge of litigation which necessitates the assertion of a position contrary to that heretofore assumed by him; and,

"*Whereas,* The city ordinances authorized the mayor by and with the consent of the city council to appoint special counsel; now be it,

"*Resolved,* That it is the sense of this Council:

"First.   That, with the fullest regard for the ability and integrity of the city counselor, the city authorities can not be expected to accept his opinion as conclusive, and to permit important rights to be acquired or lost upon the strength of it, where so much, and such evident doubt is entertained as to correctness of that opinion.   And that proper steps should be taken to force a speedy judicial determination

as to the validity of said ordinances, and if found to be valid, as to their proper interpretation.

"Second.   That in case his honor, the mayor, should see fit to this end to name special counsel, this body is ready to approve any reasonable appointment that may be made, and that this council is prepared to support any other measure adopted by the city authorities fairly calculated to bring these questions to a speedy issue and decision."

EXHIBIT "B."

"Resolution of the Council, January 15, 1895.

"Mr. Ferriss offered the following resolution as a substitute for the report of the committee on ways and means; as above:

"*Resolved*, That the mayor is hereby authorized and requested to retain D. D. Fisher and E. C. Kehr, as special counsel for the city, in the matter of contesting the claims of the National Subway Company of Missouri, its successors and assigns, to the right to occupy the streets for underground conduits, under ordinances Nos. 14798 and 15953 at a compensation of $2,500 retainer, and $2,500 to be paid contingent on final success on behalf of the city."

The cause was submitted on the above agreed statement, and on February 14, 1900, the circuit court entered judgment for the plaintiff for three thousand dollars, and after proper steps the defendant appealed.

I.

Compressed into a few words the case made is this: the city of St. Louis, a municipal corporation having power to regulate the use of its streets, by ordinances, dated February 15, 1889, and February 6, 1891, granted to the plaintiff, a business corporation, authority and permission, to construct and operate a system of conduits, pipes, etc., for conveying

electricity, under the surface of its streets for fifty years, and for such "rights and franchises" required the plaintiff to pay to it the sum of five hundred dollars semiannually. Under the grant the plaintiff partially constructed its system, but in January, 1895, the city refused to further permit the plaintiff to have, enjoy or exercise the "rights and franchises" granted, and claimed that the ordinances were void. The result was a proceeding by the plaintiff, by mandamus, in this court, against the defendant and its administrative officers, to compel the performance of the terms of said grant. This court, on June 6, 1896, finally decided that case in favor of the defendants and held said ordinances to be void. Thus the matter stood until February 19, 1897, when the plaintiff again demanded the right to exercise the powers conferred by said ordinances, and the city declined to recognize any such rights in the plaintiff. Thereupon, on May 24, 1897, the plaintiff began a second suit, by mandamus, against the defendant and its administrative officers, to compel them to carry out the terms of said grant. The result of this suit was that on June 25, 1898, this court reversed its judgment in the first case, held said ordinances to be valid and binding, and granted to the plaintiff a peremptory writ of mandamus commanding the defendants to carry out the terms of the grant.

Thereupon the defendant demanded and exacted from the plaintiff the sum of three thousand dollars, being the semiannual payments provided for by said ordinances, that fell due in the interim between the first and second judgments of this court aforesaid. The plaintiff paid said sums under protest and reserving to itself the right to sue to recover the same. And this agreed case is the result.

It will do no good to weigh words or to differentiate between a "franchise" and simple "consent" of the city, in respect to what the city confers in ordinances like these.

It is immaterial to this case, whether such grant be a

mere "consent" of the city to the exercise of a "franchise" already conferred by the State, as the plaintiff calls it, or whether it be a "franchise," as the defendant calls it. For after all, it is that which the city alone has power to grant, without which the defendant could not lawfully use the streets of the city for such purposes, and for the granting of which the city required and the plaintiff agreed to pay five hundred dollars semiannually. The city had the power to make the grant, and to prescribe the terms of the grant. The result attained was the right to so use the streets by the plaintiff, and the right of the city to exact the semiannual payments for the exercise of the right granted. The rights and duties of the parties were therefore mutual and interdependent. The city had no right to the money except as compensation for the enjoyment and exercise of the right granted, and the plaintiff was bound to pay only in case it was allowed to exercise and enjoy the right granted. The plaintiff could not, of course, avoid payment by a voluntary nonuser of the right, nor could the city deny the right and still insist upon compensation for the exercise of the right denied. Such a position would be inconsistent and unconscionable. So, after the city won in the first case, it did not demand or exact the compensation. But after it lost in the second case, it exacted back pay, for the time the plaintiff was not permitted to enjoy the right granted in consequence of the city's action. To permit such an exaction to remain effective would amount to allowing the city to take advantage of its own wrong. It will not do to say the plaintiff was deprived of the enjoyment of such right by reason of the judgment of the court, which afterwards turned out to be erroneous, and that no man is liable for loss sustained by erroneous judgments of courts. For it was the city's refusal which interrupted the plaintiff's enjoyment of the right in the first place, and which produced the erroneous judgment of the court. Moreover, to permit the city to exact and keep the compensation for the time

during which the plaintiff was deprived of the right by the refusal of the city and the erroneous judgment of the court, would impose upon the plaintiff the burden of paying for the mistakes of a court. That is, it would compel the plaintiff to pay for a right during a time when the court said no such right existed, upon the ground that the court was in error in so doing. It does not lie in the defendant's mouth to make such a claim. Inasmuch as the payment was a compensation for the enjoyment of the right, as long as the defendant prevented the plaintiff from enjoying the right, it can not claim the compensation.

Neither will it do to say, that the right was always in existence, that it was conferred by ordinance, and the ordinance conferring it was never repealed by the municipal assembly, and that no other officer or set of officers of the city had power to take away the powers conferred by ordinance. The ordinance was in force all the time, but when the city through its officers refused to allow the plaintiff to enjoy the rights conferred by the ordinance, and when the court said the ordinance was void, the plaintiff could not appeal to the ordinance and demand that it enforce itself or that it overrule the actions of the officers of the city or the judgment of the court. The second judgment established that the ordinance was a live, legal and binding document, but it did not and could not restore to the plaintiff the benefits it had lost while it was deprived of the enjoyment of the rights conferred by the ordinance, nor did it or could it establish the solecism that the city was entitled to exact pay for the rights so denied to the plaintiff while they were so denied. The enjoyment of the right was the foundation and consideration upon which the promise to pay rested. When that foundation and consideration failed or was taken away temporarily by the voluntary agency of the city, the right to demand the pay ceased.

There is no difference in principle between this case and

the case of a landlord who has leased premises to a tenant for a term of years at a certain rental, and who ousts the tenant by disseisin, before the expiration of the term, and when the tenant is restored to possession by the courts, the landlord claims the rent while the tenant was out of the possession—or where after such ouster, and where the tenant never seeks to be restored to possession, the landlord claims the rent for the remainder of the term notwithstanding such ouster. No one would contend that a landlord was entitled to rent in either of the cases supposed. And if the contention of the defendant in this case is correct, then on principle it would have been entitled to the semiannual payments for the remainder of the fifty years if the second judgment of this court had never been rendered, notwithstanding it denied the right conferred for which the payments were to be made.

The law is that "quiet enjoyment of the premises without any molestation on the part of the landlord is an implied condition on which the tenant is bound to pay rent. Rent is something given by way of compensation to the lessor, for the right to make use of the land demised; and, consequently, so far as he is concerned, the land is possessed and enjoyed by the tenant during the term specified in his contract. And, therefore, it would be no defense to an action for rent that the lessee never took possession, unless possession was withheld by the lessor or another, under a title paramount to that of the lessor. But if the tenant be at any time deprived of the premises, in whole or in part, by the landlord's agency, the obligation to pay rent ceases, because his obligation has force only from the consideration, which is the quiet enjoyment of the premises." [1 Taylor on Landlord and Tenant (8 Ed.), sec. 377; Jackson v. Eddy, 12 Mo. 209; Smith v. Thurston, 19 Mo. App. 48.]

*Quoad* this case the city is the landlord and the plaintiff is the tenant. The tenant's quiet enjoyment was interrupted

and its possession taken away by the landlord, and, therefore, its obligation to pay the rent ceased while and as long as such eviction lasted, but sprung into existence again as soon as the enjoyment was restored. Hence, the city had no right to demand or exact the semiannual payments during the time the city prevented the plaintiff from enjoying the rights conferred by the ordinances. It follows that the judgment of the circuit court is right and it is therefore affirmed. All concur.