SHARTENBERG & ROBINSON *vs.* THOMAS ELLBEY.

DECEMBER 15, 1905.

PRESENT: Douglas, C. J., Dubois, Blodgett, Johnson, and Parkhurst, JJ.

(1) *Construction of Instrument.    Leases.    Ejectment.*

Defendant hired floor space in plaintiffs' store for the term of five years from July 1, 1904, under an agreement which provided that all the receipts should be turned over to plaintiffs and contained the following provisions:

Section 4 " (Defendant) guarantees that the gross receipts shall amount to at least $10,000 per annum and he agrees to pay (plaintiffs) 20% on the difference between the actual receipts and $10,000, should such gross receipts be less than $10,000."

Section 5. " (Plaintiffs) shall retain 20% of the gross receipts turned over by (defendant) as full compensation under this lease":—

*Held* that, though inartificially drawn, a fair interpretation of the lease was that the rent was to be at least $2,000 per annum, and as there was a deficiency in the actual gross receipts which became due and payable July 1, 1905, and remained unpaid for more than 15 days, an action of ejectment was properly brought by plaintiffs.

EJECTMENT.    Heard on defendant's bill of exceptions after verdict for plaintiff, and exceptions overruled.

DUBOIS, J.    This is an action of trespass and ejectment brought to recover possession of the premises described in a lease from the plaintiffs to the defendant, upon the ground that the defendant suffered the stipulated rent for the same to be and remain due and in arrears for the period of fifteen days.

The lease is of the tenor following:

"We, Jacob Shartenberg and Harry Robinson, copartners as Shartenberg and Robinson, of Pawtucket, R. I., hereby lease to Thomas Ellbey, doing business as the Imperial Confectionery Company, a space upon the ground floor in that part of our store in said Pawtucket known as the Weeden

Building and near the entrance of said building, measuring about twenty feet in length and of a width extending to the outer edge of the counter, and also suitable space in their basement, to be used for the sale of soda water and confectionery for the term of five years from July 1, 1904, and subject to the following terms and conditions.

"1.   The said Ellbey shall furnish all his own stock, materials and implements, including soda fountain.

"2.   Said Ellbey shall hire and pay all his own help, such help to conform to all rules and regulations the same as other employees in the store.

"3.   All the receipts taken in by said Ellbey shall be turned over to said Shartenberg and Robinson as the same are received.

"4.   Said Ellbey guarantees that the gross receipts from said business shall amount to at least $10,000 per annum, and he agrees to pay to said Shartenberg and Robinson 20 per cent. on the difference between the actual receipts and $10,000, should such gross receipts be less than $10,000.

"5.   Said Shartenberg and Robinson shall retain 20 per cent. of the gross receipts turned over by the said Ellbey as full compensation under this lease.

"6.   The said Ellbey agrees that he will not assign this lease or any interest therein without the written consent of said Shartenberg and Robinson.

"And the said Shartenberg and Robinson agree with the said Ellbey:

"7.   That they will properly light and heat said premises and furnish necessary toilet conveniences.

"8.   That they will keep an accurate account of the gross amounts received by them from said Ellbey, and will upon each Monday turn over to said Ellbey, or his representative, 80 per cent. of the gross receipts of the previous week.

"9.   That they will from time to time during the continuance of said lease advertise the business of said Ellbey to such an extent as they deem advisable.

"10.   That they will not compete with said Ellbey in the sale of soda or confectionery.

"This lease and the agreements herein contained to be bind-

ing upon the parties hereto and their respective heirs, executors and administrators.

"EXECUTED in duplicate this seventeenth day of June, A. D., 1904.

"SHARTENBERG & ROBINSON,
"THOMAS ELLBEY·.

"Witness
      "LOUIS S. LAW."

After verdict for the plaintiffs in the Superior Court the defendant duly prosecuted to this court his bill of exceptions, based on the following grounds:

"1.   That the court erred in ruling that the guarantee of receipts in the fourth clause of the lease of the plaintiffs to the defendant, and which is the foundation of this action, must be construed to mean that the receipts mentioned in·the fifth clause of the lease shall be $10,000.

"2.   That the court erred in refusing the motion made by the defendant to direct a verdict for said defendant, on the ruling that the deficiency existing under the fourth clause of said lease was rent, and was due at the end of one year.

"3.   That the court erred in its charge·to the jury that the deficiency claimed by the plaintiffs was due and payable July 1, 1905, and that if any portion of the said deficiency remained unpaid, that it was the duty of the jury to find a verdict for the plaintiffs."

(1)   The decision of these questions obviously depends upon the proper interpretation of the lease.

As stated by Ames, C. J., in *Deblois* v. *Earle*, 7 R. I. 26, at p. 29: "The cardinal rule in the interpretation of all instruments . . . is 'to read the writing,' and, taking its language in connection with the relative position and general purpose of the parties, to gather from it, if you can, their intent in the questionable particular."

The object in construing a deed is to ascertain the intention of the parties, and it is well settled that deeds must be construed so as to effectuate, if possible, that intention when consistent with settled rules of law and where the expressions

in the deed do not positively forbid it or render it impossible. 13 Cyc. 601. The intent must primarily be gathered from a fair consideration of the entire instrument and the language employed therein, and should be consistent with its terms, including its scope and the subject-matter.

A liberal construction is to be given to deeds inartificially and untechnically drawn. 13 Cyc. 604. Whenever the language used is susceptible of more than one interpretation, the court will look at the circumstances existing at the time of the transaction, such as the situation of the parties, etc. *Waterman* v. *Andrews*, 14 R. I. at p. 595.

An inspection of the instrument in question discloses the fact that the lease is very inartificially drawn, and therefore entitled to a liberal construction for the purpose of ascertaining and effectuating the intention of the parties. Considering the situation of the parties at the time of its execution as disclosed by the lease, we find the plaintiffs in possession of a desirable shop or store wherein the defendant was anxious to obtain space for the establishment of his business. It is evident that he was satisfied that he could succeed there, for he "guarantees" that the gross receipts from his business shall amount to at least $10,000 per annum and agrees to pay to the plaintiffs 20 per cent. on the deficiency in case the gross receipts shall fall below that sum. Although the word "rent" is not used in the instrument, it is provided by clause five that the plaintiff shall retain 20 per cent. of the gross receipts turned over by the defendant as full compensation under the lease; and rent is the compensation, either in money, provisions, chattels or labor, received by the owner of the soil from the occupant thereof. Bouv. Law Dict.

The word "guarantees" in clause four is not used in a technical sense. Guaranty is an undertaking to answer for another's liability and collateral thereto. It is a secondary, and not a primary, obligation. Bouv. Law Dict. As used in the lease it expresses the defendant's confident estimate that the gross receipts from the business will amount to at least $10,000 per annum and his willingness to maintain his faith in his judgment by allowing that sum to be used as a basis upon

which his minimum rent shall be computed, and he supports it by his agreement to pay to the plaintiffs 20 per cent. of the deficiency, in case there should be any, between the actual and estimated gross receipts.

A fair interpretation of clauses four and five is that the rent is to be at least $2,000 per annum, that is 20 per cent. of $10,000; that it is to be paid by the retention of 20 per cent. of the gross receipts if they shall amount to or exceed $10,000 per annum; that if they do not, the rent is to be partially paid by retaining 20 per cent. of the gross receipts each week as the same are received, under clauses five and eight, and by the payment of the balance by the defendant, under the provisions of clause four, at the end of the year, the time when the deficit could be ascertained. The words "20 per cent. of the gross receipts turned over by the said Ellbey" in clause five do not exclusively apply to actual receipts but include the 20 per cent. of estimated gross receipts which, in clause four, the defendant agrees to pay. The literal expressions in clause five must yield to the manifest intent of the entire instrument. Therefore the plaintiffs have not received full compensation, or rent, under the provisions of clause five of the lease, if the amount found to be due under clause four therefor remains unpaid.

As there was a deficiency, in the actual gross receipts, which became due and payable July 1, 1905, and remained unpaid for more than fifteen days, and as this action was brought thereafterwards, the suit was properly brought; and as the rulings of the judge presiding at the trial were in conformity with the law hereinbefore expressed, the same must be sustained, and the exceptions thereto are overruled.

Case remitted to the Superior Court, with direction to enter judgment on the verdict.

*John J. Fitzgerald*, for plaintiff.
*Terrence M. O'Reilly*, for defendant.