## Saulsberry v. Saulsberry.

### (Decided February 2, 1915.)

### Appeal from Carter Circuit Court.

Rent—What Profits Included—Royalties From Mines.—Where a grantor conveyed land to his sons, and provided that his wife

should "receive one-half of all rents from off the place, from all resources whatsoever," this provision held to include royalties from mines.

S. S. WILLIS and R. D. DAVIS for appellant.

H. R. DYSARD for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

William Saulsberry was the owner of about one thousand acres of land surrounding the town of Aden, in Carter county. On December 29, 1896, he conveyed the land to his two sons, Raymond H. Saulsberry and Harry Saulsberry, by a deed which contained the following provision:

"That if Elizabeth Saulsberry, the wife of William Saulsberry, should outlive said William Saulsberry that she has the right to control her house and household goods, and her garden and yard, and Elizabeth Saulsberry is to receive one-half of all rents from off the place, from all resources whatsoever, so long as she remains the widow of William Saulsberry, and has the right to assist the boys in renting and collecting rents on said land."

William Saulsberry died April 29, 1899. On the land in question were certain coal and clay mines, and ten or twelve small houses. In 1905 John M. Saulsberry leased the mines and operated them on a royalty basis until the year 1909, when he purchased the interests of his brothers, Raymond and Harry, in the land in question. Since that time he has been operating the mines.

This action was brought by Elizabeth Saulsberry, widow of William Saulsberry, and mother of John M. Saulsberry, against the defendant, John M. Saulsberry, to recover one-half of the rents, royalties and proceeds of timber sold since John M. Saulsberry acquired title. The case was transferred to equity and tried by the chancellor. The chancellor held that the deed did not cover royalties or timber, and gave judgment in favor of plaintiff for only one-half of the rents from the houses on the land. From that judgment plaintiff appeals.

The principal question to be determined is, whether or not the words "rents from off the place, from all resources whatsoever," include royalties from mines.

The evidence leaves no doubt that the grantor, William Saulsberry, knew of the existence of the mines, and that these mines were worked prior to his death, though the evidence for defendant tends to show that after he purchased the mines he made new openings on the land.

The word "rent" is variously defined as:

"The profit or return, reserved, payable periodically, but not necessarily immediately, if it issues from period to period, during the whole continuance of the grantee's estate, whether from year to year, or from month to month, etc.. This will constitute the reservation a rent." 2 Blackstone, 41.

"A certain profit issuing yearıy out of lands and tenements corporeal." Black's Law Dictionary, p. 1022.

"The compensation, either in money, profits, chattels or labor, received by the owner of the soil from the occupant thereof." Shartenberg & Robinson v. Ellbey, 27 R. I., 414, 62 Atl., 979; 3 Kent. Com., 460.

"A rent is a right to a certain profit issuing annually, or periodically, out of lands and tenements, corporeal, the use of them, and for furniture, in retribution for the land that passes." 20 Am. & Eng. Ency. of Law, 1st Ed., p. 1035.

"The profit out of lands and tenements." 34 Cyc., 1333.

"A sum stipulated to be paid for the use and enjoyment of land." In Re Roth & Appel, 181 Fed., 667, 104 C. C. A., 649, 31 L. R. A. (n. s.), 270.

"The consideration paid for the use of land." Brooks v. Cook, 38 Southern, 641, 141 Ala., 499.

"Something given by way of compensation to the lessor for the right to make use of the land demised." National Subway Co. v. City of St. Louis, 169 Mo., 319, 69 S. W., 290.

Royalty is a certain percentage or proportion, specifically stated or on a graduated scale, according to the value of the ore, based on either the net proceeds, smelter returns, mill returns or returns evidenced by the certificate of the United States Assay Office, or otherwise as the parties may agree upon. 27 Cyc., 710; Maloney v. Love, 11 Colo. App., 388, 52 Pac. 1029.

Counsel for appellee insist that the real difference between rent and royalty is that rent is the price paid for the use of a thing, while royalty is a part of the thing

itself. This distinction, however, can hardly be maintained; for it was held at an early date that if "a man hath land in which there is a mine of coals, or of the like, and maketh a lease of the land (without mentioning any mines) for life or for years; the lessee for such mines as were open at the time of the lease made, may dig and take the profits thereof. But he cannot dig for any new mine that was not open at the time of the lease made, for that would be adjudged waste." Coke Littleton, 54b; Clegg v. Rowland, L. R., 2 Eq., 160, 35 L. J. Ch., 396, 14 L. T. Rep. (n. s.), 217; Saunders Case, 5 Coke, 22. There the rent paid carried with it something more than the mere use. It was also compensation for the profits of the open mine. And, in Indiana Natural Gas & Oil Co. v. Stewart, 45 Ind. App., 554, it is said that the word "royalty" as used in a gas lease generally refers to "a share of the product or profit reserved by the owner for permitting another to use the property." In Kissick v. Bolton, 134 Iowa, 650, it is said that the word "royalty" as employed in a coal mine lease means a share of the profit reserved by the owner for permitting the removal of the coal, and is in the nature of rent. Though it may be conceded that "royalty" is a more appropriate word where rental is based upon the quantity of coal or other mineral that is or may be taken from a mine, yet it cannot be doubted that the terms "rent" and "royalty," as the result of usage and custom, are often used interchangeably. 27 Cyc., 710; Raynolds v. Hanna, 55 Fed., 783. Indeed, mining leases are made every day where the term "rent" is employed, even though it may, as a matter of fact, assume the form of "royalties." Of course, in the ordinary interpretation of legal terms it is customary to give them their technical meaning, in the absence of anything to indicate that the words were used in a different sense. However, it not infrequently happens that a technical legal term is employed in an entirely different sense, and where, upon a consideration of the whole instrument, this fact is made clearly to appear, such meaning will be adopted. Thus, the word "heirs," which is much more comprehensive than the word "children," because it includes all those who are capable of inheriting, is often held to mean children where the context or other parts of the instrument in which it is employed show that it was so intended by the parties. Though

not so frequently, perhaps, it sometimes happens that the word "children" is used in the sense of "heirs" and is given that meaning. Childress v. Logan, 65 S. W., 124; Moran v. Dillehay, 8 Bush, 434; Hood v. Dawson, 98 Ky., 285; Lachland's Heirs v. Downing's Ex'r., 11 B. Mon., 32; Williams v. Duncan, 92 Ky., 125; Harkness v. Lisle, 132 Ky., 767.

Indeed, the courts will not give to legal terms their strictly technical meaning when such a construction will defeat the manifest intention of the parties to the instrument. With this rule in mind, let us examine the deed and the circumstances surrounding the parties. The grantor had owned the land for many years. He knew of the existence of the mines. Not only so, but the mines had been actually worked in his lifetime. Elizabeth Saulsberry was his wife. He evidently intended to make for her some suitable provision. Under these circumstances, he provided that she was to receive "one-half of all the rents from off the place, from all resources whatsoever." If the defendant had leased the mines for a periodical rent there can be no doubt that plaintiff would have been entitled to half of such rent; and the purpose of the grantor should not be defeated merely because the defendant leased the mine on a royalty instead of a rental basis. Some effect must be given to the words "from all resources whatsoever," considered in the light of the grantor's knowledge of the existence of the mines, and of the fact that the mines, to say the least, constituted a very valuable part of the farm. It is clear, we think, that "all resources whatsoever" necessarily include the mines, and that the grantor intended that his widow should share equally not only in the income from the mines, but in all other income and proceeds from the farm, regardless of the manner and form of payment, or the name by which it might be designated. We are strengthened in this conclusion by the fact that for a number of years Mrs. Saulsberry was regularly paid her part of the royalties, thus showing that the parties themselves, looking at the matter in the light of the principles of common sense, placed the same construction upon the language of the deed.

We see no reason to disturb the judgment as to the rent of the cottages. On the return of the case, the chancellor will fix the amount of the recovery on the other items, either basing his findings on the proof now in the

record, or giving to the parties, if they desire, an opportunity to take additional proof.

Judgment reversed and cause remanded for proceedings consistent with this opinion.

Judge Hannah not sitting.