CASE 24—PETITION EQUITY—OCTOBER 15.

## Williams, &c., v. Duncan, &c.

APPEAL FROM LOUISVILLE LAW AND EQUITY COURT.

1. CONSTRUCTION OF DEVISE—WORD "CHILDREN" CONSTRUED AS HEIRS.—While the word "children" is not, like "heirs," a word of limitation, importing by its own force a fee-simple estate, it will be so construed when necessary to effectuate the intention of the testator as made manifest from a consideration of his whole will.

   Under a devise by a testator to his "grandsons and their children," the grandsons take a fee-simple estate, it being manifest from the use of the word "children" throughout the will that it was used in the sense of heirs.

2. SAME.—Under such a devise only the grandsons living at the testator's death and those born within the period of gestation after that time are included. It was not the testator's intention that all his grandsons that might thereafter be born should take.

3. A FOREIGN GUARDIAN CAN NOT ACT AS GUARDIAN APPOINTED IN THIS STATE unless authorized by an order of a county court in this

State having jurisdiction, as provided by section 16, article 2, chapter 48, General Statutes. And an order of the county court authorizing such guardian to collect, receive and remove to the place of the ward's residence any personal estate of the ward in this Commonwealth is not sufficient to authorize him to act as guardian for other purposes.

4. SUIT BY FOREIGN GUARDIAN.—While a foreign guardian may by virtue of sub-section 4 of section 35 of the Civil Code bring an action in this State without an order of a county court of this State authorizing him to act as guardian here, yet where such an action is brought for the sale of the ward's real estate the purchaser can not be required to accept a deed and pay the purchase price until it is sufficiently proved that the plaintiff was, according to the laws of the State of the infant's residence, appointed guardian.

5. COMPETENCY OF FOREIGN RECORDS AS EVIDENCE.—To give full faith and credit in this State to the records and judicial proceedings of a court of another State they must be attested by the clerk thereof with the seal of the court annexed, if there be a seal, and certified by the Judge, Chief Justice or presiding magistrate of the court to be attested in due form. A certificate, signed by the "Judge of Probate," with seal attached, to the effect that plaintiff was, by "the Judge of the Probate Court of Pettis county, State of Missouri," appointed and qualified as guardian of the infants whose property was sold in this action, was not competent evidence of the appointment of plaintiff as guardian, and therefore the court properly refused to require the purchaser to accept a deed or pay the purchase price.

6. A PURCHASER AT JUDICIAL SALE of a lot, 110 1-2 feet front, can not have the sale set aside upon the ground that he did not get all the land he purchased merely because the back line is only 82 1-2 feet. As the back line was described as "100 feet more or less," the purchaser had sufficient notice that it was shorter than the front line, and as all the lines were described by landmarks it was his own fault if he was deceived.

DODD & DODD FOR APPELLANTS.

1. The word " children " as used by the testator in the sixth and seventh clauses of his will was intended as a synonym for the word "heirs." (Tyler v. Tyler, 5 Ky. Law Rep., 936; Harper v. Wilson, 2 Mar., 466; Turner v. Patterson, 5 Dana, 295; Williamson v. Williamson, 18 B. M., 376; Sheets v. Grubbs, 4 Met., 341; Hopson v. Shipp, 7 Bush, 644; Lochland v. Downing, 11 B. M., 34; Hughes v. Hughes, 12 B. M., 121; Johnson v. Johnson, 2 Met., 335; Churchill v. Churchill, 2 Met., 469; Dunlop v. Shreve, 2 Duv., 334; Feltman v. Butts, 8 Bush, 119; Moran v. Dillehay, 8 Bush, 435; Koenig v. Kraft, 87 Ky., 95; Mefford v. Dougherty, 89 Ky., 58; Miller v. Carlisle, 90 Ky., 205.)

2. There has been no misdescription of the property; in any event, not

such as will authorize a nullification of the sale and release of the purchaser.

The meaning of the expression "be the same more or less," is that the parties were to run the risk of gain or loss as there might happen to be an excess or deficiency in the estimated quantity. (Harrison v. Talbott, 2 Dana, 258; Young v. Craig, 2 Bibb, 270; Berkley v. Bryan, Litt. Sel. Cas., 91; Brown v. Parish, 2 Dana, 6; Fannin v. Bellony, 5 Bush, 665; Pollock v. Wilson, 3 Dana, 25; Smith v. Smith, 4 Bibb, 81; Shelby v. Smith, 2 Mar., 513; Cleveland v. Rogers, 1 Mar., 193; Rodgers v. Garnett, 4 Mon., 269; Hampton v. Eubank, 4 J. J. Mar., 634.)

Monuments in description control courses and distances. (Berkley v. Bryan, Litt. Sel. Cases, 91; Cowan v. Fauntleroy, 2 Bibb, 261; Preston v. Bowman, 2 Bibb, 493; Buford v. Cox, 5 J. J. Mar., 589; Brown v. Huger, 21 How., 305; Flagg v. Thruston, 13 Pick., 145; Sayers v. City of Lyons, 10 Iowa, 255; Cole v. Thayer, 3 Me., 72; Northrop v. Sumney, 27 Barb., 196.)

3. As the foreign guardian produced his credentials from the State in which he was appointed, and was, by the judgment of the Jefferson County Court, authorized to act as guardian for his wards in this State he had the legal capacity to maintain this action. (Shelby v. Harrison, 84 Ky., 147.)

In any event this was simply a question of evidence, not of jurisdiction, and as such was concluded by the judgment of sale and did not affect the title of the purchaser. (Jacob v. L. & N. R. R. Co., 10 Bush, 263; Newcomb v. Newcomb, 13 Bush, 544; Commonwealth v. Yarbrough, 84 Ky., 501; Galpin v. Page, 18 Wall., 365; Yocum v. Forman, 14 Bush, 494.)

BULLITT & SHIELD for appellee Duncan.

1. The record does not show that D. M. Williams was appointed guardian in this State. The appointment by the Jefferson County Court conferred upon him only the power to care for the property and collect its rents.

It was competent to the county court so to limit its appointment. (Gen. Stats., chap. 48, art. 2, sec. 16.)

2. The Missouri record not being attested by the clerk of the court is not competent evidence under the Kentucky statute. (Gen. Stats., chap. 37, sec. 12.)

3. There was such a misdescription of the property as entitled the purchasers to have the sale set aside. (2 Minor's Institutes, p. 880; Fry on Specific Performance, secs. 572, 797, 799, 800, 1, 2.)

The rule of *caveat emptor* applies only to sales after confirmation. (Farmers' Bank v. Peter.)

4. The devise by the testator to "my grandsons and their children" vested

a life estate in the grandsons with a remainder in fee to their children. (Carr v. Estill, 16 B. M., 309; McIlvain v. Porter, 9 Ky. Law Rep., 900; Mefford v. Dougherty, 89 Ky., 58; Tyler v. Tyler, MS. Op., May 27, 1884.)

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

In 1883, appellants, five of them sons of D. M. Williams, Sr., and two sons of Oscar and Frances M. Finley, all being then infants, brought an action by their guardians, D. M. Williams, Sr., and Oscar Finley, against Levi Tyler and Mary E. Tyler for a sale and division, under section 490, Civil Code, of a lot of land devised by the 6th clause of the will of their grandfather, William C. Williams, as follows: " The remainder of my property on Fifth street, between Main street and the river, in the city of Louisville, I give and devise to my grandsons and their children."

In October, 1883, a judgment was rendered in accordance with prayer of the petition for public sale of the lot, but the sale was not made until June, 1889, when appellee Duncan, being the highest bidder, was reported by the marshal of court as purchaser; but having failed to execute bond for the purchase price according to the terms of sale, a rule was awarded against him to show cause why he should not be compelled to do so; in response to which he filed exception to the sale which we will consider in order.

The first ground of exception is that the fee-simple title to the lot did not, under the will, vest in the testator's grandsons.

It appears that previous to the institution of this action another had been brought by the same plaintiffs for judgment construing the will, and particularly the 6th clause.

In that action an opinion and judgment were rendered wherein it was decided and determined that each of six of the grandsons living at death of the testator, and of two born within nine months after that event, was entitled to an undivided eighth in fee-simple, but that one of the latter class having died in infancy, his father, Levi Tyler, became entitled by descent to his share. As all the living children and grandchildren of the testator appear to have been made parties to that action, the judgment therein rendered would be conclusive of appellants' absolute title to the lot sold, and, therefore, decisive even against appellee Duncan, though he was not a party to it, except that, according to the construction he contends for, and the one adjudged by the lower court in this case to be proper, appellants have only a life estate, with remainder in fee to their children hereafter born, who, not being then in existence, could not be brought before the court.

"Children" is not, like "heirs," or, as construed under our statute, "heirs of the body," a word of limitation, importing by its own force a fee-simple estate. Nevertheless, it has been often found necessary, in order to effectuate intention of the testator, made manifest to the court by considering the whole will, to give it a meaning different from its legal and, perhaps, popular signification. Accordingly, it has been in some cases held to indicate a life estate, in others a joint estate, and in others courts have not hesitated to interpret it in the sense of "heirs," and allow it the same effect. The testator in this case left a widow and four children, two sons—one being married—and his daughters, both of whom had husbands. To each of the sons he gave a lot of land absolutely. To

each of his two daughters he also gave a distinct parcel, and one lot jointly; but in every instance previous to the 11th clause the name of each daughter was coupled with the words "and her children," or in case of the joint devise "their children," and in one clause a sum of money was required to be paid by one son to Mrs. Tyler to make her equal, which he directed to be invested " for the benefit of said daughter and her children." And he was even so particular as to direct the lot, given jointly, to be laid off, so as " to give my said daughters *and their children* a front of 200 feet."

It is manifest from the repeated and persistent use of the words mentioned that he had a definite, uniform and fixed idea of their meaning or of what he supposed and intended them to mean. And it is, therefore, persuasive he designed the words " and their children " used in the 5th clause to have the same meaning as when used in making devises to his daughters. A partial solution of the question of his intended meaning may be derived from the 11th clause as follows: " If either of my two daughters should die without leaving children or grandchildren I direct that the property devised to her herein shall go to my remaining daughter and her children, and if both of my daughters should die and either of them leave no children I direct that the property herein devised to her shall go to the children of my other daughter."

Now it is evident the object of that clause was to keep the real property devised to his daughters in the enjoyment of his immediate descendants, and the husbands from having a life estate, even, in any part of it, in case the wife of either died before he did. And as that object could be accomplished only by providing expressly and

explicitly, as was done in the 11th clause, they should take a life estate only, it is plain he believed the words " and her children," or " and their children," unexplained did not import a life estate, but would be understood and interpreted as meaning a fee-simple estate in each of his two daughters, either wholly or jointly with her children. And if such was the case it is altogether reasonable that he did not intend for the words " and their children," as used in the 5th clause, to signify a life estate merely in his grandsons. Consequently, he must have intended them, each, to take absolutely one-sixth, that being the number then born, or else for each to take that fractional part jointly with the indefinite number to be thereafter born to him. The latter construction we think unreasonable, for if he had intended his then living grandsons to have less than one-sixth he would have provided for their after-born brothers and sisters, his grandchildren, instead of their children, his great-grandchildren, some of whom he must have known and expected might not possibly, in due course of nature, be born to take their shares, in waiting, for more than half a century. In our opinion the six grandchildren living, and the two born within the period of gestation after his death, take, under the will, each one-eighth of the land in fee-simple.

The second ground is that appellee did not get all the land he purchased. It appears the lot fronts 110½ feet on Fifth street, but the north line, instead of running back at right angles to that street, ran so as to make less than a right angle with it, and consequently the west line was not as long as the east, or front line, making a less area than would have been in a parallelogram. But the lot

was so described in the judgment for sale, in the adver-
tisement of sale and also in the report of the Marshal as
that appellee need not have been deceived, and if he was
the.fault was his own.   For the west, or back line, was
described as *100 feet, more or less*, which was sufficient to
apprise the most casual observer it was not as long as the
front, or east line, and that, consequently, the lot was not
a parallelogram.   By actual measurement the west line
proved to be only 82½ feet, but there was no loss on the
front line, nor such per cent. of loss of the whole area as
to authorize the sale set aside.   Appellee bid for the lot
by the front foot, the full measure of which he got, and
as all the lines were described by land marks no deception
was practiced, and he need not have been deceived, if he
was so.   That ground of exception is, therefore, un-
tenable.

But the third is more serious.   Four of the infant
plaintiffs in the action resided with their father, D. M.
Williams, Sr., in the State of Missouri, and there, if at
all, he was appointed their guardian, and as the excep-
tion puts in issue the fact of such appointment, the ques-
tion arises whether there was sufficient evidence of it
before the court either previous to or after judgment for
sale of the lot.

Section 16, article 2, chapter 48, General Statutes, pro-
vides that a guardian appointed and qualified according
to the law of the place where the minor resides, may col-
lect, receive and remove to such place of residence any
personal estate being in this Commonwealth, and author-
ity may, upon application to the county court having jur-
isdiction, be given to such foreign guardian to sue for,
recover and so remove any personal estate of such minor,

or *otherwise to act as guardian appointed in this Commonwealth.*

D. M. Williams, Sr., it appears, did apply to and obtain from the Jefferson County Court authority to collect, receive and remove the personal estate of his alleged wards, but not to act as guardian appointed in this Commonwealth. His right to maintain this action, if it existed, was derived from section 35, sub-section 4, Civil Code, as follows: "The action of an infant, or person of unsound mind, who resides in a foreign country and who has a guardian * * * may be brought by such guardian," etc.

But before a purchaser, at judicial sale, of property belonging to infants residing in another State can be required to accept a deed therefor and pay the purchase price it must be sufficiently proved that the plaintiff was, according to the laws of that State, appointed their guardian. For without such authority the purchaser would not acquire any title to the property that the infants could not subsequently deprive him of.

The only evidence offered of the appointment of D. M. Williams, Sr., as guardian is what purports to be a certificate signed Z. F. Bailey, Judge of Probate, and seal attached, to the effect that he was by the Judge of the Probate Court of Pettis county, State of Missouri, appointed and qualified as guardian of the infant plaintiffs.

According to section 12, chapter 37, General Statutes, to give full faith and credit in this State to records and judicial proceedings of a court of another State they must be attested by the clerk thereof with the seal of the court annexed, if there be a seal, and certified by the

Judge, Chief Justice or presiding magistrate of the court to be attested in due form.

The record offered in evidence not being so authenticated was not, in our opinion, competent evidence of the appointment of D. M. Williams, Sr., as such guardian and, consequently, appellee, the purchaser, was not bound to accept a deed or pay the purchase price.

Judgment affirmed.