Bell v. Kinneer, &c.

CASE 46—PETITION EQUITY—MAY 11.

# Bell v. Kinneer, &c.

APPEAL FROM DAVEISS CIRCUIT COURT.

1. LIFE INSURANCE—BENEFICIARIES—DISTRIBUTION OF PROCEEDS.— Under a policy of life insurance taken out by a woman upon her life, which provides that the insurance money shall be payable to and for the sole and separate use of her husband and children, upon her death the proceeds of the policy are not to be treated as part of her personal estate, and as such to be inherited by the husband and children, but are to be divided *per capita* between the husband and children living at her death under the contract of insurance; and the only effect of the death of one of the children before her death was to reduce the number of parts into which the whole was to be divided.

2. GUARDIAN AND WARD.—A father who is the guardian of his infant children, whose circumstances are such that he is not required to spend any of their money in their support, should not be credited with any sums so expended; and the evidence in this case shows part of the children to have been self-sustaining, and that the father used all of their money which came to his hands, in the payment of his debts which had been previously contracted.

SWEENEY, ELLIS & SWEENEY FOR APPELLANT.

1. The statute providing for the distribution of surplus personalty governs in this. case. McLin v. Calvert, 78 Ky., 473; Handworker v. Deirmeyer, 36 S. W. Rept., 869.

2. A father without estate may charge his minor children with their support and education. Patton v. Patton, 3 B. M., 160; Tanner v. Skinner, 11 Bush, 120; Overfield v. Overfield, 17 Ky. Law Rept., 313.

W. F. HAYES FOR APPELLEES.

1. A father will only be allowed for the maintenance of his infant children where his destitute circumstances make such allowance equitable. Clements v. Hughes, 13 Ky. Law. Rept., 352.

2. The fund in question does not pass accoring to the statute of descent and distribution. The case of McLin v. Calvert (78 Ky., 472), was decided under a construction of the charter of the Kentucky Masonic Mutual Insurance Company, and has no application to this case. Kentucky Masonic Mutual Insurance Co. v. Watts, manuscript opinion, 1879; Kelly v. Ball, 14 Ky. Law Rept., 132; Hallen v. Gardner's Adm'r., 5 Ky. Law Rept., 857; 13 A. & E. Enc. of Law, p. 653; Felix v. The Grand Lodge, 31 Kansas 81 (47 Amer, Rept., 479); Jackson v. Nelson, 147 Mass., 300; Conn. Mutual Life Ins. v. Baldwin, 15 R. I., 150.

3. The guardian having deposited the entire fund in the bank to his own credit as guardian, thereby dedicated to the chil-- dren his own interest in the fund and constituted himself trustee of the same for their benefit, and he is precluded from asserting his former interest in the fund. Perry on Trusts, secs.' 96, 98, 99, and notes; Tanner v. Skinner, 11 Bush, 120.

4. One of the infant children having died before the mother the fund should have been divided into fifths · instead of sixths, there being five beneficiaries at the death of the insured. · Robinson v. Duvall, 79 Ky., 83.

T. L. KARN OF COUNSEL ON SAME SIDE.

JUDGE PAYNTER DELIVERED THE OPINION OF THE COURT.

The Kentucky Grangers Mutual Benefit Society on March 7th, 1887, issued a policy of insurance on the life of Mary E. Kinneer. J. A. Kinneer was her husband; at the time the policy was issued, they had five children. Before the mother's death, one of her children, an infant died. The mother died in 1890. J. A. Kinneer qualified as the guardian of the four remaining children, and received for himself and as guardian $990 56 from the society which issued the policy. J. A. Kinneer died some three years after his wife. These consolidated actions were brought on the bonds which he executed as guardian, with J. M. Bell as security.

It is contended (1) that J. A. Kinneer, as the husband of the insured, inherited the entire sum named in the policy.

(2) that in the event the court holds the father as guardian was liable to his children, then he had paid his son A. W. Kinneer the full amount due him; (3) that he had expended for the support and education of J. C. Kinneer, Ora B. Kinneer and Edna Kinneer the entire amount due them. Before entering into the consideration of the other questions, it may be added here that there is no proof to sustain the contention or claim that the father had paid A. W. Kinneer the amount due him.

The policy provides that the "said sum shall be payable to and for the sole and separate use and benefit of said Kinneer's husband and children." It was an express contract with the society in consideration of the premiums which the insured agreed to pay, the husband and children were to be paid within a given time after her death, the sum named in the policy. The very terms of the policy preclude the idea that the husband and children were to receive the sum by inheritance. They had an insurable interest in the life of the wife and mother, and were made beneficiaries under the policy. The children were as much the object of her solicitude and care, as was the husband. The policy was as much for their several benefits as it was for the benefit of the husband. The policy was issued, and the insured died while the General Statutes were in force. Under the statute then in force the husband was entitled to the whole surplus of the deceased wife's personal estate, and if the policy is to be treated as the surplus of the personal estate of the wife, then the husband would have been entitled to the whole of it. If the insured had intended that her husband should have the entire amount, why did she say that

(18)

it was for the use and benefit of the husband and children? Had she desired that the policy should go to her estate, it could have been made (if the charter of the company allowed it to be so made) payable to herself or personal representative. To hold that the husband was entitled to the money collected under the policy, is to utterly ignore the purpose of the insured, and the plain letter and spirit of the contract. In McLin v. Calvert, &c., 78 Ky., p. 472, the court was considering a provision of the charter of an insurance company, wherein it was provided that the fund was for the benefit of the "widow and children" of the deceased member, and the court held that the fund should be distributed under the rule prescribed by the statute for the distribution of the surplus personalty of the intestate. Without stopping to deny or affirm the correctness of the rule enunciated in that case or to indulge in an effort to distinguish that from this case; we say that we are here called upon to construe a contract which the insured made for the benefit of her husband and children. The covenant was that upon the happening of an event the society would pay not the husband, but the husband and children a given sum. We are of the opinion that the husband did not take the whole or one-half of the sum, but *per capita* with the four children surviving the insured. This entitled him to one-fifth of the fund. It is contended that in the event the court holds that the husband did not take the whole or one half of the fund, then he took one-sixth under the policy, and one-sixth by inheritance. It could not have been contemplated by the insured and the insurer that upon the death of one of the six beneficiaries that the insured would in-

herit all or any of the interest which would have gone to such beneficiary had the deceased one survived the insured. Nor was it contemplated that the interest of one of the children at death should go to the father. It can not be contended that had all the children died before the mother, except one, that the father would have taken five-sixths and the surviving child one-sixth of the fund. When one of the beneficiaries died, it reduced the parts one, into which the whole was to be divided. We think Robinson against Duvall, 79 Ky., 85, sustains our conclusion. In that case the court said: "It would be more consistent with his evident design in insuring his life for the benefit of all his family—wife and children alike, to suppose that his intention was, that in case one or more should die before himself without leaving children, the share to which those dying would have been entitled, had they survived him, should go to the survivors. He dedicated the whole to his family, share and share alike and as the family was reduced by death and he came to renew the policy by paying the annual premiums, it can scarcely be doubted that he did so in order to provide for those who still survived." It is contended that under the doctrine in Overfield against Overfield, 17 Law Reporter, 313, and Clemens, &c., against Hughes, 13 Law Reporter, 352, that as the father was poor and needed the money that came to his hands to support the children, other than the eldest, A. W. Kinneer, the security on his bond as guardian should not be compelled to refund it to the wards. When the guardian received the money, he had a two-horse team, with which, and his own daily labor, he endeavored to support his family. There is evidence tend-

ing to prove that he made from $1 75 to $3 00 per day with the team until he sold it in the fall before his death, then the father worked at whatever he could get to do until two or three months before his death when he was unable longer to labor for his own and his children's support. He did not own but rented a home. The second son, J. C. Kinneer, was sixteen or seventeen years old when his mother died. He did not only work for his own support, but gave from $3 00 to $5 00 per week to his father to aid in supporting himself and family. He was more than self-sustaining. The daughter, Ola, was fourteen years of age when her mother died. She did the principal part of the cooking, and housework from her mother's death until her father died, and we think her labor fully compensated her father for all he expended on her. We think until he sold his team in the fall of 1892, his circumstances did not require he should spend any of his daughter's money for their support. More than one year before he sold his team he had spent all the money which came to his hands, and so far as this record shows very little of it was spent in the support of his family. The evidence is not satisfactory as to what he did with the money, yet so far as it does show what he did with it, he used it in the payment of debts which he had contracted previous to its reception. For a month before his death, when he had ceased to labor, he and his family were in want but their necessities were not relieved by the expenditure of his wards' money, but by the charity of his neighbors and his old comrades in the army. We think there is a failure to bring this case under the rule of the Overfield and Clement cases. Instead of adjudging that the husband was

entitled to two-sixths of the fund, the court should have adjudged that he was entitled to one-fifth of it.

The case is affirmed on the original, and reversed on the cross appeal.