CASE 83.—ACTION  BY  JAMES  L.  LISLE  AND  ANOTHER
        AGAINST  RUFUS  LISLE,  JR.,  AND  OTHERS.—
        March 16, 1909.

## Harkness v. Lisle---Lisle v. Harkness

Appeal from Scott Circuit Court.

R. L. STOUT, Circuit Judge.

From the judgment L. V. Harkness appeals against
James L. Lisle and others; James L. Lisle and others
appeal against Rufus Lisle, Jr., and others and Rufus
Lisle, Jr., and others, appeal against James Lisle and
others—Affirmed on first and third appeals—Reversed
on second.

1. Wills—Construction—Estate Devised.—To determine the nature
   of the estate devised, reference may be made to other devises
   in the will.
2. Wills—Construction—Estate Devised.—A will, devising to a son
   "and his children" 250 acres of land, gave him a fee-simple,
   and not a life, estate, especially in view of other devises show-
   ing that testator knew what language to employ in giving a
   life estate, and in view of a clause restraining alienation of
   the various tracts devised, and in view of a provision requir-
   ing the son to pay $4,200 to his brothers and sisters.
3. Deeds—Conditions—Restraint of Alienation—Validity.—A con-
   dition to a grant against alienation to any one is void, but
   conditions preventing alienation to a specified person, or his
   heirs, etc., are valid.
4. Wills—Devises—Provisions Repugnant to Devise in Fee.—A
   devise over of an estate devised in fee is void.
5. Deeds—Conditions—Restraint on Alienation—Validity.—A re-
   straint on alienation for a reasonable time is valid.

Harkness v. Lisle, &c.—Lisle v. Harkness.

6. Estates—Vested Fee-Simple Estates—Essentials—Right to Alienate.—Right to alienate is an inherent and inseperaole equality of vested fee-simple estates.

7. Wills—Conditions—Restraint on Alienation—Validity—Reasonableness.—A provision prohibiting devisees of fee-simple estates from alienation or incumbering the land during the lifetime of any of the devisees, testator's children, is void as restraining alienation for an unreasonable time.

SAMUEL M. WILSON for appellant.

POINTS AND AUTHORITIES.

1. Preliminary statement.   The estate acquired by appellee, James L. Lisle, was either an exclusive fee, a joint fee with his children and co-appellees, Rufus and Lillian Lisle or a mere life estate with remainder in fee to said children.   Appellant's contention is that appellee, James L. Lisle, took an exclusive fee to the property in question in himself alone.   If. however, this be not so, then it is submitted that said James L. Lisle acquired a joint fee in said property with his children above named.   Such was the decision of the lower court.   (Sims, etc. v. Skinner's Ex'r, 118 Ky. 573; McFarland, etc. v. Hatchett, etc., 118 Ky. 423.)

2. If the appellee, James L. Lisle, acquired merely a life estate in the property here involved, then the restraint on the alienation of said estate for his lifetime is valid, and should be upheld. (Morton's Guardian v. Morton, etc., 27 Ky. Law Rep. 661; Holt's Ex'r v. Deshon, etc., 31 Ky. Law Rep. 744; Trustees of Common School District No. 31, v. Isaac's Guardian, 115 S. W. 724; Lawson v. Lightfoot, etc., 27 Ky. Law Rep. 217.)   If, on the other hand, said appellee, James L. Lisle, took a fee either alone cr jointly with his children, then it is submitted that the judgment of the lower court holding invalid the absolute restraint on alienation sought to be annexed to said estate by the testator, Rufus Lisle, Sr., in the fifteenth clause of his will, was correct, and should be upheld, for the reason that a limitation restraining absolutely the alienation of a fee-simple estate during the life time of a devisee thereof, who at the time of acquiring such estate is a young man in good health, is, under the decisions of this court, an unreasonable and illegal restraint upon alienation. (Chenault, etc. v. Burgess, 29 Ky. Law Rep. 569; Civil Code, sec. 492, subsec. 1; sec. 489, subsecs. 3, 4, and 5; sec. 491, and sec. 490; Robinson v. Gray, 29 Ky. Law Rep. 1296; Wallace v. Smith, 113 Ky. 263;

Smith v. Smith, 115 K y.329; Call v. Shewmaker, etc., 24 Ky. Law Rep. 986; Kentucky Statutes, sec. 2360.)

BRADLEY and BRADLEY attorneys for Rufus and Lillian Lisle and V. A. Bradley, Guardian.

1. The question to be decided on these several appeals may be divided into two parts:

First, the main question as to what estate is conveyed under the fifth clause of the will in the record, by the words "to my son James L. Lisle and his children," and:

Second, the question whether clause fifteen of said will is void as being an illegal restraint upon alienation.

2. The contention of the infants and guardian is that the devise above mentioned created a life estate in James L. Lisle and a remainder in fee to the infants Rufus and Lillian.

### AUTHORITIES CITED.

Tyler v. Tyler, 5 Ky. Law Rep. 936; Carr v. Estill, 55 Ky. 308.

OPINION OF THE COURT BY WM. ROGERS CLAY, Commissioner—Reversing.

These appeals involve the construction of the will of Rufus Lisle, a prominent farmer and breeder of thoroughbred stock, who died a resident of Fayette county, Ky., in the year 1891, and the validity of the proceedings of the Scott circuit court decreeing a sale of the tract of land devised by Rufus Lisle to his son, James L. Lisle. The appeals will therefore be considered together.

This action was instituted by James L. Lisle and his wife, Pattie C. Lisle, against their only living children, Rufus Lisle, Jr., and Lillian Lisle, infants over 14 years of age, and their statutory guardian, Victor Bradley, and John H. Payne and E. P. Halley, Sr., trustees under the last will and testament of Rufus Lisle, Sr. The petition charges that by the

fifth clause of the will of Rufus Lisle, Sr., the testa-
tor devised to James L. Lisle a fee-simple title to the
250 acres of land known as the ''Duke place,'' located
in Scott county, Ky., and that the fifteenth clause of
said will was an unreasonable restraint upon the fee
so devised, and was therefore null and void.   It is
further charged: That if the estate devised to James
L. Lisle was not a fee simple, it was a joint estate
in fee with his children and a vested estate in posses-
sion, and could not be divided without materially
impairing its value and the value of plaintiff's in-
terest therein; that it would be to the interest of the
joint owners therein, including the infant defendants,
to sell the property and reinvest the proceeds in other
land which would yield a better income. It was further
charged:  That the trustees named in the will at-
tempted to comply with its provisions by deeding the
250 acres of land in Scott county to James L. Lisle
and his children.   That the granting clause of said
deed was as follows, ''The party of the first part
does hereby sell and convey unto the party of the
second part, their heirs and assigns, the following de-
scribed real property,'' etc.; and the habendum of said
deed was as follows: ''To have and to hold said prop-
erty upon the party of the second part, their heirs
and assigns forever.''   The petition then alleges that
the deed so made did not conform to the provisions
of the will, and prays for a construction of said will,
asking that, if it be adjudged that plaintiff James L.
Lisle was the exclusive owner of the fee in said prop-
erty, the deed be reformed so as to invest him with
that character of title; also, that paragraph 15 of said
will be adjudged an unreasonable limitation upon the
estate devised, and that it be held for naught and

void; and that if the property be held to be a joint
fee in James L. Lisle and his children, or that he be
the owner of a life estate with remainder to his chil-
dren, the property be sold and the proceeds rein-
vested under the direction of the court.

Process was properly served upon John H. Payne
and E. P. Halley, Sr., trustees, and upon the infant
defendants, Rufus Lisle, Jr., and Lillian Lisle, and
upon their statutory guardian, Victor Bradley. All
the parties therefore were before the court. A de-
murrer was filed by the infant defendants to that
portion of the petition charging that plaintiff was
entitled either to the absolute fee or to a joint fee with
his children. It was contended by their guardian
that the estate devised to James L. Lisle was simply
a life estate. This demurrer was sustained to that
paragraph containing the plea that the estate devised
was an absolute fee simple in James L. Lisle. It
was overruled as to that paragraph pleading a joint
estate in fee simple in him and his children, and
judgment entered in accordance with the decision on
the demurrer. James L. Lisle appeals from that
portion of the judgment sustaining defendants' de-
murrer to the paragraph pleading an absolute fee-
simple title in James L. Lisle. The infant defendants
and their guardian appeal from that portion of the
judgment adjudging a joint fee-simple estate in
James L. Lisle and his children. Thereafter proof
was taken upon the question of indivisibility and the
advantages to be derived from a sale and reinvest-
ment of the proceeds. The case was then submitted,
and it was adjudged by the court that the property
could not be divided without materially impairing its
value as a whole, or the several parts thereof, that

the fifteenth clause of the will of Rufus Lisle, Sr., was illegal and void, and that the property be sold for the purpose of reinvestment. It was further ordered that the proceeds of the sale be held subject to the further orders of the court. It appears that, prior to the institution of the proceedings, appellant L. V. Harkness agreed in writing with James L. Lisle to purchase the land at the price of $150 per acre. The testimony shows that this was in fact a high price, and that the sale at such a price was very advantageous to all parties concerned. Upon the sale by the master commissioner, L. V. Harkness complied with his agreement and purchased the property at a specified price. In due time he filed exceptions to the sale. Certain of these exceptions it will be unnecessary to notice. The principal exceptions relied upon are: (a) That the court erred in holding that the estate devised was a joint estate in fee simple in James L. Lisle and his children; it being contended that plaintiff James L. Lisle had either a fee-simple estate or an estate for life, with remainder to his children. (b) That the court erred in holding that the restraint upon the alienation of the property, imposed by the fifteenth clause of the will, was illegal and void. (c) That the deed from John H. Payne and E. P. Halley, Sr., trustees for James L. Lisle and his children, does not conform to the will of Rufus Lisle, Sr. All of the purchaser's exceptions were overruled, and he appeals.

We shall now proceed to a consideration of the questions involved on this appeal. The will in question bears date of October 7, 1890. It was probated November 23, 1891. In the first clause the testator directs the payment of his debts. In the second clause

the testator devises and bequeaths to his wife, Mary
M. Lisle, for and during her natural life, a certain
farm, also the income of certain shares of stock. He
then provides that, at the death of his wife, the shares
of stock should be divided equally among his children,
James L. Lisle, Hampton Halley Lisle, Virginia H.
Lisle, Nancy Lisle, and Miriam Lisle, but that at the
death of his wife, if any of his children should be dead
leaving issue, said issue should take, in such shares of
stock, the same interest that the parent would have
taken, if living, and, if any child should die without
issue living, then the share of such child should be
divided equally among his living children and the
issue of any child that might be dead. In the third
clause certain stock and agricultural implements and
household furniture are devised to his wife. Clause
4 directs that the testator's blooded horses he sold
by his executors. Clause 5, which relates particu-
larly to the property involved in this action, is as
follows: "I give, devise and bequeath to my son
James L. Lisle and his children two hundred and
fifty (250) acres of the tract of land I own in Scott
county, Kentucky, known as the Duke place, said two
hundred and fifty (250) acres is to be laid off so as
to include all the houses, buildings and improve-
ments on said land, upon the condition that my said
son shall pay to my daughter Virginia H. Lisle one
thousand dollars ($1,000.00) at once, and the further
sum of eight hundred dollars ($800.00) when she is
twenty-five (25) years of age, and upon the further
condition that he shall pay my other children, Hamp-
ton Halley, Nancy and Miriam, each the sum of eight
hundred dollars ($800.00) as they respectively become
twenty-five (25) years of age. I require my said son

to make said eight hundred dollars ($800.00) pay-
ments, because of advancements that I have hereto-
fore made to him. I also devise and bequeath to my
said son James fifty (50) shares of stock in the Fay-
ette National Bank, Lexington, Kentucky, to be de-
livered to him as soon as possible after my death. He
shall have the right to do as he pleases with said
stock.'' By clause 6 the land devised to the testator's
wife for life, together with certain bank stock, is
devised and bequeathed "to my son Hampton Halley
Lisle, and his children.'' By clause 7 the remainder
of the Duke place (the other part of which was con-
veyed to James L. Lisle) was devised "to my daugh-
ter, Virginia H. Lisle and her children,'' and it is
provided: "* * * The said land shall be owned
and held by my said daughter as her sole and sepa-
rate estate, free from the debts and control of any
husband she may have.'' Certain bank stock is also
bequeathed to his said daughter. By clause 8 the
testator devised and bequeathed "to my daughter
Nancy Lisle and her children." one-half of a tract of
350 acres, with the provision that "said land shall
be owned and held by my said daughter as her sole
and separate estate, free from the debts or control
of any husband she may have.'' By this clause cer-
tain shares of stock were also bequeathed to his
daughter Nancy. By clause 9 the testator devised
and bequeathed "to my daughter Miriam H. Lisle
and her children'' the other half of the 350 acres of
land, "to be owned and held as her sole and separate
estate, free from the debts and control of any hus-
band she may have.'' This daughter is also be-
queathed certain bank stock. Clause 10 is as follows:
"If it is deemed advisable by the trustee hereinafter

named to invest the fifty-eight hundred dollars ($5,800.00) mentioned in the devise to my daughters Nancy and Miriam, or any part in buildings and improvements on the tracts of land devised to them, the said trustee shall have power and authority to expend the whole or any part of said sum in such buildings and improvements.'' Clause 11 is as follows: "I hereby authorize John H. Payne and Edmond Halley, Senior, to divide the tract of three hundred and fifty (350) acres of land devised to my daughters Nancy and Miriam and to execute the deeds necessary to invest each of them and the trustee hereinafter named with title to the land allotted to them in said division. The said John H. Payne and Edmond Halley, Senior, are also authorized and empowered to divide the land devised to my daughter Virginia and son James, and to make deeds investing them and the trustee hereinafter named, with title to the lands allotted to each of them in said division, and for the purpose of making said division and deeds I hereby invest them with all necessary power and authority in the premises.'' Clauses 12, 13, and 14 it will be unnecessary to consider. Clause 15 is as follows: '''Neither of my children nor the trustee herein named shall sell, convey or in any way charge or incumber the land herein devised, for any purpose whatever during the lifetime of any of my said children.''

The first question to be determined is: What estate in the land in question was devised to James L. Lisle? The language employed is: "I give, devise and bequeath to my son James L. Lisle and his children,'' etc. This language brings the case within the rule laid down in one of three lines of cases. One

class of cases is to the effect that the parent takes a
joint estate in fee simple with his children then born
or thereafter to be born.   Turner v. Patterson, 5
Dana, 295; Cessna v. Cessna's Adm'r, 4 Bush, 516;
Powell v. Powell, 5 Bush, 620, 96 Am. Dec. 372; Bell
v. Kinneer, 101 Ky. 271, 40 S. W. 686, 72 Am. St.
Rep. 410.   Another class of cases is to the effect that
the parent takes merely a life estate with remainder
to his children.   Fletcher v. Tyler, 92 Ky. 145, 17 S.
W. 282, 36 Am. St. Rep. 584; Smith v. Upton, 13
S. W. 721, 12 Ky. Law Rep. 28; Davis v. Hardin, 80
Ky. 672.   Then there is another class of cases where
the word ''children'' is used in the sense of ''heirs.'
This construction is adopted only in those cases
where, upon consideration of the whole will, it is evi-
dent that the words were used as words of limitation
and not of purchase.   Childers v. Logan, 65 S. W.
124, 23 Ky. Law Rep. 1239; Moran v. Dillehay, 8 Bush,
434; Hood v. Dawson, 98 Ky. 285, 33 S. W. 75; Lach-
land's Heirs v. Downing's Exr.'s, 11 B. Mon. 32;
Williams v. Duncan, 92 Ky. 125, 17 S. W. 330.

In the case of Williams v. Duncan, supra, the court
said: " 'Children' is not, like 'heirs,' or, as construed
under our statute, 'heirs of the body,' a word of limi-
tation, importing by its own force a fee-simple estate.
Nevertheless it has been often found necessary, in
order to effectuate the intention of the testator, made
manifest to the court by considering the whole will,
to give it a meaning different from its legal, and per-
haps popular, signification.   Accordingly, it has been
in some cases held to indicate a life estate, in others
a joint estate, and in others courts have not hesi-
tated to interpret it in the sense of 'heirs' and allow
it the same effect.   The testator in this case left a

widow and four children, two sons, one being married, and his daughters, both of whom had husbands. To each of the sons he gave a lot of land absolutely. To each of his two daughters he also gave a distinct parcel, and one lot jointly; but in every instance previous to the eleventh clause the name of each daughter was coupled with the words 'and her children,' or in case of the joint devise 'their children,' and in one clause a sum of money was required to be paid by one son to Mrs. Tyler to make her equal, which he directed to be invested 'for the benefit of said daughter and her children,' and he was even so particular as to direct the lot, given jointly, to be laid off, so as "to give my said daughters and their children a front of 200 feet.' It is manifest from the repeated and persistent use of the words mentioned that he had a definite, uniform, and fixed idea of their meaning, or of what he supposed and intended them to mean, and it is therefore persuasive he designed the words 'and their children' used in the fifth clause to have the same meaning as when used in making devices to his daughters. A partial solution of the question of his intended meaning may be derived from the eleventh clause, as follows: 'If either of my two daughters should die without leaving children or grandchildren I direct that the property devised to her herein shall go to my remaining daughter and her children, and if both of my daughters should die and either of them leave no children I direct that the property herein devised to her shall go to the children of my other daughter.' Now it is evident the object of that clause was to keep the real property devised to his daughters in the enjoyment of his immediate descendants, and the husbands from having

a life estate, even, in any part of it, in case the wife of either died before he did; and as that object could be accomplished only by providing expressly and explicitly, as was done in the eleventh clause, they should take a life estate only, it is plain he believed the words 'and her children,' or 'and their children,' unexplained, did not import a life estate, but would be understood and interpreted as meaning a fee-simple estate in each of his two daughters, either wholly or jointly with her children; and if such was the case it is altogether reasonable that he did not intend for the words 'and their children,' as used in the fifth clause, to signify a life estate merely in his grandsons. Consequently he must have intended them each to take absolutely one-sixth, that being the number then born, or else for each to take that fractional part jointly with the indefinite number to be thereafter born to him. The latter construction we think unreasonable, for, if he had intended his then living grandsons to have less than one-sixth, he would have provided for their after-born brothers and sisters, his grandchildren, instead of their children, his great-grandchildren, some of whom he must have known and expected might not possibly, in due course of nature, be born to take their shares, in waiting, for more than half a century. In our opinion the six grandchildren living, and the two born within the period of gestation after his death, take, under the will, each one-eighth of the land in fee simple."

In the case of Childers v. Logan, supra, the provision of the will was as follows: "I will to Addy and her children and Charley and his children $5,000, the money to be invested in bank stock until they are twenty-five years of age." The court said: "He (the

testator) evidently meant by this clause of his will to give the $5,000 to his children Addy and Charley, and that it should be paid to them when they arrived at the age of 25 years.   The daughter, Addy, was seven, and the son, Charley, three, years of age when the will was made.   The testator did not intend that his daughter and son should not take the $5,000 until their children were 25 years of age.   He did not intend to postpone the payment of the money to them until that time should arrive.   He evidently used the words children in the sense of heirs, and the absolute title to the sum thus devised vested in his children named, and it was his intention that they should receive their shares upon the arrival of the age of 25 years.''

In the Am. & Eng. Encyc. of Law, vol. 5, p. 1092, the rule is thus stated: ''The term 'children' is a word of purchase, and will not be construed as equivalent to 'heirs' in the absence of other words or circumstances showing it to have been used in that sense. But where it is necessary to give effect to the instrument, or where there are other words showing that 'children' was used in the sense of 'heirs,' the term will be construed as a word of limitation equivalent to 'heirs' or 'heirs of the body,' etc.   So the term 'heirs' has been construed as equivalent to 'children.' ''

Under the more recent decisions of this court, where there is nothing in the deed or will to show a contrary purpose, the tendency is to hold an estate deeded or devised to a man and his children or to a woman and her children is a life estate to the first taker, with remainder to the children.   Hall v. Wright,

121 Ky. 16, 87 S. W. 1129; Brumley v. Brumley, 89 S. W. 182, 28 Ky. Law Rep. 231.

We therefore find ourselves forced to the position of holding that James L. Lisle took a fee-simple or a life estate. To determine the character of the estate devised to him, we may consider the provisions of the will with reference to the other devisees. It is manifest that he used the word "children" advisedly, for he repeats it in connection with the devises and bequests made to each of his children. The devise to the testator's wife has an important bearing. The land devised to her is "for and during her natural life." This plainly shows that when the testator intended to devise a life estate he knew what language to employ for that purpose. If he had intended a mere life estate in James L. Lisle, the most natural thing for him to have done would have been to use the same language employed in the devise to his wife. Furthermore, it is evident that the restraint imposed by clause 15 upon the alienation of the land devised to his children was imposed in the belief on the part of the testator that the language employed in the respective devises to his children would import a fee, and without such a restraint the devisees would have full power to sell and convey the same. Then, too, in each of the devises to his daughters, there is the following provision: "* * * The said land shall be owned and held by my said daughter as her sole and separate estate, free from the debts and control of any husband she may have." It is evident from this language that the testator supposed he had conveyed a fee to his daughters, and that without such qualifying language the husband would have control over the land. Besides, the land is to be held "as her

sole and separate estate,'' and not as the sole and separate estate of her children, or as their sole and separate estate. In clause 10 the testator speaks of ''the devise to my daughters Nancy and Miriam, or any part in buildings and improvements on the tracts of land devised to them.'' It is evident from this language that he believed he had devised the land to them. This is made all the stronger by the language employed with reference to the devise to his wife. When he speaks in the sixth clause of giving to his son Hampton Halley Lisle and his children the farm of 185 acres, he does not employ the language ''heretofore devised to my wife,'' but he uses the language, ''heretofore devised to my wife for life.'' When the testator comes to the question of dividing the tract of 350 acres of land between his daughters Nancy and Miriam, he authorizes the trustees ''to execute the deeds necessary to invest each of them and the trustee hereinafter named with title to the land allotted to them in said division.'' Likewise, when he provides for the division of the Duke place between his daughter Virginia and his son James, he authorizes the trustees ''to make deeds investing them and the trustee hereinafter named, with title to the lands allotted to each of them in said division.'' We therefore conclude that, when the whole will of the testator is considered, it was his evident purpose to invest his son James L. Lisle with a fee-simple title to the land in controversy.

We are fortified in this conclusion by the rule laid down in the early case of Lindsay's Heirs v. McCormack, 2 A. K. Marsh. 229, 12 Am. Dec. 387, decided in the year 1820. That case involved a construction of a certain provision of the will of Joseph Lindsay,

which was probated January 21, 1783. The provision
in question was as follows: "I give to my loving wife,
Ann Lindsay, one thousand acres of land, lying in
the fork of. Elkhorn, obtained by certificate from the
commissioners of the district of Kentucky, granted
to Fulton Lindsay, and conveyed to me by bill of sale
from said Lindsay, bearing date the 12th of April,
1781. The said Ann is to pay Fulton Lindsay, Jr.,
at the time he arrives at the age of twenty-one, two
hundred pounds, provided she obtains a legal title
for the same, also to pay off the heir of William
Pogue, deceased." In that case the court, in an
opinion by Judge Owsley, said: "It is contended on
the part of the appellants that as the devise to Ann
Lindsay is in general terms to her, without containing
any words descriptive of the nature of the estate
intended to be devised, it should be construed to pass
an estate for life and not of inheritance. As Lindsay,
the testator, died before the passage of the act of
the Virginia Legislature dispensing with words other-
wise necessary in a deed or will to transfer an estate
of inheritance, the legal import of the devise must be
deduced upon common-law principles applicable to
the construction of wills before the passage of the
act. Testing the decree by those principles, there can,
however, be little doubt but Ann Lindsay acquired an
estate of inheritance and not barely an estate for life.
It is apparent from the devise that no grant had
been obtained for the land from the commonwealth
when the will was made, and that it was intended by
the testator to authorize a perfection of the title in
the name of the devisee. It could not therefore have
beeen deemed material by him in the devise to Ann
to describe specifically the nature of the estate in-

tended to be given, for, as by obtaining a grant from the commonwealth, she would be invested with an estate in fee, he must have supposed that his intention to dispose of such an interest would be sufficiently clear by providing for her procurement of the title. As a question of intention therefore, depending upon a construction of the will, we would have no hesitation in deciding that an estate of inheritance passed to Ann; but admitting, if no provision had been made requiring the devisee to pay Fulton Lindsay, £200, etc., the devise might have been differently construed, yet, as that provision clearly imposes a personal charge and not a charge upon the estate devised, the devisee must be held to have taken an estate in fee, for it is well settled that a devise which would otherwise pass but for a life estate, by creating a personal charge upon the devisee, passes an estate of inheritance.''

In the case under consideration the devisee, James L. Lisle, was directed to pay to testator's daughter Virginia H. Lisle the sum of $1,000 immediately, and the further sum of $800 when she arrived at 25 years of age. He was further required to pay to testator's children Hampton Halley Lisle, Nancy Lisle, and Miriam Lisle, each, the sum of $800 as they respectively became 25 years of age. It is inconceivable that the testator intended that James L. Lisle should have only a life estate in the land devised, and yet, in order to secure it, have to pay the sum of $4,200 to his brother and sisters. Under such circumstances the benefit he might derive from the land devised might be far less than the sum required to be paid. The sum required to be paid was a personal charge upon the devisee, and this is a strong circumstance

in favor of the view that the estate devised was one of inheritance and not for life. Being of the opinion that said estate is a fee simple in James L. Lisle alone, we think the court erred in holding that he had a joint estate in fee simple with his children.

We shall next discuss the question of the validity of clause 15 of the will. By that clause the testator's children and their trustees are prohibited from selling, conveying, or in any way charging or incumbering the land devised, for any purpose whatever, during the lifetime of any of said children.

The general rule of law applicable to restraints on alienation may be found in Littleton, section 360, and is as follows: "If a feoffment be made upon this condition, that the feeoffee shall not alien the land to any, this condition is void, because when a man is enfeoffed of lands or tenements he hath power to alien them to any person by the law. For if such a condition be good, then the condition should oust him of all power which the law gives him which should be against reason; and therefore such a condition is void." The exception to this doctrine may be found in Littleton, section 361, which section is as follows: "But if the condition be such that the feoffee shall not alien to such a one, naming his name, or to any of his heirs, or of the issues of such a one, etc., or the like, which conditions do not take away all power of alienation from the feoffee, then such a condition is good."

In the well-considered case of Mandlebaum v. McDonell, 29 Mich. 78, 18 Am. Rep. 61, the court said: "Now, neither Littleton nor Coke, nor any of the annotators of Coke upon Littleton, so far as I have been able to discover, has mentioned any such qualifi-

cation of the general rule laid down by Littleton in
section 360, nor anywhere intimated that such a con-
dition against alienation for a particular time, or for
a reasonable time, or for any time whatever, would be
valid; and the same may be said of the other ap-
proved English works upon real estate: Blackstone's
Commentaries, Sheppard's Touchstone, Bacon's
Abridgement, Cruise's Digest, Comyn's Digest, and
all other English works which I have been able to
examine. And if there is any English decision since
the statute Quia Emptores, where the point was in-
volved, in which it was held competent for a feoffer,
grantor, or devisor of a vested estate in fee simple,
whether in remainder or in possession, by any condi-
tion or restriction in the instrument creating it, to
suspend all power of the feoffer, grantee, or devisee,
otherwise competent, to sell, for a single day, I have
not been able to find it; and the able counsel for the
defendants, whose research nothing of this kind is
likely to escape, seem to have been equally unsuccess-
ful. In making this statement I do not overlook
Large's Case, 2 Leonard, 82 and 3 Leonard, 182,
which by some elementary writers and annotators,
and in some dicta by judges, and perhaps one or two
decisions in this country, seems to have been under-
stood as warranting such a restriction, and upon
which all such elementary writers, annotators, and
judges, who profess to rest such an opinion upon any
authority, rely, but which I propose presently to show
decides no such thing as to any vested estate of any
kind.''

In Am. & Eng. Encyc. of Law, vol. 24, p. 867, the
rule is thus stated: ''There are many dicta, as well as
a few direct authorities, to the effect that restraints

on alienation for a limited time are valid, but in a number of cases the validity of such restraints has been said to be doubtful; and on principle, and according to the weight of authority, a restriction, whether by way of condition, or of limitation over, or of bare prohibition against any and all alienation, although for a limited time, of a vested estate in fee, whether in possession or remainder, is void. In the case of a contingent remainder, however, or of any other interest not vested, a restriction upon the power of alienation to last as long as the interest remains contingent is valid.''

As an inseperable part of this doctrine, it is the recognized rule of law that a devise over of an estate devised in fee is void, and this court has so held in a number of carefully considered cases. Barth v. Barth, 38 S. W. 511, 18 Ky. Law Rep. 840; Clay v. Chenault, 108 Ky. 77, 55 S. W. 729; Ray v. Spears' Ex'r, 64 S. W. 413, 23 Ky. Law Rep. 816; Humphrey v. Potter, 70 S. W. 1062, 24 Ky. Law Rep. 1264; Cralle v. Jackson, 81 S. W. 669, 26 Ky. Law Rep. 417; Becker v. Roth (decided Jan. 29, 1909, but not yet officially reported) 115 S. W. 761. But this court is committed to the doctrine that a restraint on alienation for a reasonable time is valid. In Stewart v. Brady, 3 Bush, 623, the restraint upon alienation was until the devisee arrived at the age of 35 years. In Stewart v. Barrow, 7 Bush, 368, the restraint was for a specified length of time. In Kean's Guardian v. Kean, 18 S. W. 1032, 19 S. W. 184, 13 Ky. Law Rep. 956, alienation was restrained until the devisee reached the age of 28. In Wallace v. Smith, 113 Ky. 263, 68 S. W. 131, the devisee was prohibited from selling the property until he reached the age of 35. In Johnson v.

Dumeyer, 66 S. W. 1025, 23 Ky. Law Rep. 2243, the devisee, a daughter, was restrained from disposing of the property for a period of 20 years after the death of the testator. In Morton's Guardian v. Morton, 120 Ky. 251, 85 S. W. 1188, the restraint was during the lives of the joint life tenants. In Lawson v. Lightfoot, 84 S. W. 739, 27 Ky. Law Rep. 217, it was provided that the remainder interest should not be sold during the life of the tenant for life. In all of these cases it was held that the restraints upon alienation were for a reasonable time, and therefore valid. In discussing the question, this court, in the case last cited, speaking through Judge Settle, said: "It must be conceded that the great weight of authority outside of Kentucky is to the effect that, where the fee-simple title to real estate passes under a deed or will, any restraint attempted to be imposed by the instrument upon its alienation by the grantee, or devisee, is to be treated as void, and such is clearly the rule announced by Mr. Gray in his excellent work on Restraints of Alienation; but the contrary view has been adopted by this court in repeated decisions, beginning with Stewart v. Brady, 3 Bush, 623, and ending with Wallace v. Smith, 113 Ky. 263, 68 S. W. 131. Stewart v. Barrow, 7 Bush, 368; Rice v. Hall, 42 S. W. 99, 19 Ky. Law Rep. 814; Kean's Guardian v. Kean, 18 S. W. 1032, 19 S. W. 184, 13 Ky. Law Rep. 956; Johnson v. Dumeyer, 66 S. W. 1025, 23 Ky. Law Rep. 2243. In other words, the accepted doctrine in this state is that restraints upon alienation may be imposed for a reasonable period. This court has, however, never fixed a limit to such restraint, but in Stewart v. Brady, supra, it was held that a devise of land to the testator's daughter, with the

limitation that it should not be disposed of by her until she became 35 years of age, was reasonable, and in Kean's Guardian v. Kean, 18 S. W. 1032, 19 S. W. 184, 13 Ky. Law Rep. 956, it was held that a restriction accompanying a devise of real estate to a son of the testator that he should not have the power to dispose of it until he became 28 years of age was good. If such a restriction may be imposed for the periods indicated by the cases supra, why may it not endure for a longer time, or, as contemplated by the testator in this case, during the life of his widow, the tenant for life of the real estate, the alienation of which is attempted to be restricted? The manifest intention of the testator, R. A. Lightfoot, was to preserve the property intact during the life of the widow, and until it should be taken in possession by the daughters. The widow was beyond middle life when the will was probated, so after all her life expectancy was not then so great as to render unreasonable the restriction placed by the testator upon the right of the devisees to dispose of the property. After a careful consideration by the whole court of the question presented by the record, it is deemed safer to adhere to the former decisions of the court thereon, though this conclusion has not been reached without misgiving as to its correctness upon the part of a minority of the court: the writer of this opinion being of that minority. It may not, however, be improper to suggest that, notwithstanding the restriction imposed by the will upon the power of the devisees to dispose of the real estate in question, if the deed of general warranty tendered appellant by them should be accepted, they probably could not thereafter recover the property· at any rate, they

could not do so without being made to account upon their warranty for the consideration received by them, with interest.''

We then come to the question whether or not the restriction contained in the will under discussion is reasonable. Here the testator attempted to impose a restraint upon alienation, not for a specified period of time, nor until the devisee arrived at a certain age, but during the entire lifetime of the devisee. The general rule is that the right of alienation is an inherent and inseparable quality of every vested fee-simple estate. To hold that alienation could be restrained during the lifetime of the fee-simple holder would be to deprive the fee of all its essential qualities. As said by Littleton: ''If such a condition be good, then the condition should oust him of all power which the law gives him, which should be against reason.'' While bound by the former adjudication of this court to adhere to the doctrine that a limitation for a reasonable length of time is valid, we have no hesitation in saying that the limitation attempted to be imposed by the will in question is unreasonable. A testator cannot devise a fee, and then destroy it entirely. We therefore conclude that clause 15 of the will is invalid.

In view of the fact that the deed executed to James L. Lisle by John H. Payne and E. P. Halley, Sr., does not convey a fee-simple estate, and inasmuch as said trustees are before the court, judgment may be entered upon the return of the case declaring that deed void and directing the trustees to make, in conformity with this opinion, a deed to the property in question to James L. Lisle.

On the appeal of L. V. Harkness and of Rufus Lisle,

Jr., etc., the judgment is affirmed. Judgment on the appeal of James L. Lisle, etc., is reversed, and cause remanded for proceedings consistent with this opinion.